# EXHIBIT 1

BY FAX

**MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. (SBN 90058)
Adam M. Tamburelli, Esq. (SBN 301902)
29800 Agoura Road, Suite 210
Agoura Hills, California 91301
Telephone:    (818) 991-8080
Facsimile:    (818) 991-8081
ssaltzman@marlinsaltzman.com
atamburelli@marlinsaltzman.com

*Attorneys for Plaintiffs, individually and on behalf of*
*all others similarly situated and aggrieved*

**ENDORSED**
**FILED**
*San Francisco County Superior Court*

**DEC 2 8 2018**

CLERK OF THE COURT
BY: KALENE APOLONIO
Deputy Clerk

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| TRICIA YEOMANS, ISMAIL CHRAIBI, ADRIAN RODRIGUEZ, ROBERT JENKINS, and DOROTHY JENKINS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WORLD FINANCIAL GROUP INSURANCE AGENCY, INC., a California corporation; WORLD FINANCIAL GROUP, INC., a Georgia corporation; and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No.   **CGC - 18 - 572397**<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **DECLARATORY RELIEF** (Code Civ. Proc., § 1060)<br><br>2. **FAILURE TO PAY MINIMUM WAGES** (Labor Code §§ 1194, 1197);<br><br>3. **FAILURE TO PAY OVERTIME WAGES** (Labor Code §§ 510, 1194, 1198 and Applicable Wage Order);<br><br>4. **FAILURE TO PROVIDE MEAL BREAKS** (Labor Code §§ 226.7, 512, and Wage Order);<br><br>5. **FAILURE TO PROVIDE REST BREAKS** (Labor Code §§ 226.7, 512, And Wage Order);<br><br>6. **FAILURE TO MAINTAIN ADEQUATE RECORDS** (Labor Code § 1174, Wage Order);<br><br>7. **FAILURE TO REIMBURSE FOR NECESSARY BUSINESS EXPENSES** (Labor Code § 2802);<br><br>8. **FAILURE TO PROVIDE ADEQUATE WAGE STATEMENTS** (Labor Code §§ 226, 226.3);<br><br>9. **UNLAWFUL DEDUCTIONS FROM WAGES** (Wage Order);<br><br>10. **WAITING TIME PENALTIES** (Labor Code §§ 201-203);<br><br>11. **UNFAIR COMPETITION** (Bus. & Prof. Code § 17200 *et seq.*);<br><br>12. **QUANTUM MERIT/UNJUST ENRICHMENT** |

1

CLASS ACTION COMPLAINT

**MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. (SBN 90058)
Adam M. Tamburelli, Esq. (SBN 301902)
29800 Agoura Road, Suite 210
Agoura Hills, California  91301
Telephone:     (818) 991-8080
Facsimile:     (818) 991-8081
ssaltzman@marlinsaltzman.com
atamburelli@marlinsaltzman.com

*Attorneys for Plaintiffs, individually and on behalf of
all others similarly situated and aggrieved*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| TRICIA YEOMANS, ISMAIL CHRAIBI, ADRIAN RODRIGUEZ, ROBERT JENKINS, and DOROTHY JENKINS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> WORLD FINANCIAL GROUP INSURANCE AGENCY, INC., a California corporation; WORLD FINANCIAL GROUP, INC., a Georgia corporation; and DOES 1 to 100, inclusive, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. **DECLARATORY RELIEF** (Code Civ. Proc., § 1060) <br><br> 2. **FAILURE TO PAY MINIMUM WAGES** (Labor Code §§ 1194, 1197); <br><br> 3. **FAILURE TO PAY OVERTIME WAGES** (Labor Code §§ 510, 1194, 1198 and Applicable Wage Order); <br><br> 4. **FAILURE TO PROVIDE MEAL BREAKS** (Labor Code §§ 226.7, 512, and Wage Order); <br><br> 5. **FAILURE TO PROVIDE REST BREAKS** (Labor Code §§ 226.7, 512, And Wage Order); <br><br> 6. **FAILURE TO MAINTAIN ADEQUATE RECORDS** (Labor Code § 1174, Wage Order); <br><br> 7. **FAILURE TO REIMBURSE FOR NECESSARY BUSINESS EXPENSES** (Labor Code § 2802); <br><br> 8. **FAILURE TO PROVIDE ADEQUATE WAGE STATEMENTS** (Labor Code §§ 226, 226.3); <br><br> 9. **UNLAWFUL DEDUCTIONS FROM WAGES** (Wage Order); <br><br> 10. **WAITING TIME PENALTIES** (Labor Code §§ 201-203); <br><br> 11. **UNFAIR COMPETITION** (Bus. & Prof. Code § 17200 *et seq.*); <br><br> 12. **QUANTUM MERIT/UNJUST ENRICHMENT** |

13. INTENTIONAL MISCLASSIFICATION
(Labor Code § 226.8)

14. VIOLATIONS OF PRIVATE ATTORNEYS
GENERAL ACT (Labor Code §§ 2698 *et seq.*)

DEMAND FOR JURY TRIAL

Plaintiffs TRICIA YEOMANS, ISMAIL CHRAIBI, ADRIAN RODRIGUEZ, ROBERT JENKINS, and DOROTHY JENKINS ("Plaintiffs"), on behalf of themselves, individually, and all others similarly situated and aggrieved, bring this Complaint against Defendants WORLD FINANCIAL GROUP INSURANCE AGENCY, INC., WORLD FINANCIAL GROUP, INC., and DOES 1 to 100, inclusive (collectively, "Defendants"), and for causes of action against them, allege and complain as follows:

## INTRODUCTION

1.      Defendants' stated business purpose is to market financial and insurance products sold through its affiliated companies. Defendants recruit as many individuals as possible to sign up to work for Defendants by representing that joining Defendants as "Associates" will allow individuals to build and operate their own financial services business, and that Defendants merely give them the tools to build that business.

2.      However, in reality, Defendants conduct their business by way of a massive pyramid scheme: once prospective Associates pay the required $100 application fee to join Defendants and are approved, one of Associates' primary duties is to recruit more Associates for the benefit of Defendants—a duty for which they receive no compensation. Indeed, Defendants set the criteria for Associates' promotion up the company hierarchy, and one of the main factors involved in achieving promotions is the number of new Associates that an Associate recruits.

3.      Because of Defendants' intense focus on recruiting to build the pyramid, they place very little emphasis on marketing or selling financial and insurance products to anyone other than new Associates and their family and friends. In fact, Defendants' emphasis on recruiting as many people as possible is one of their primary sales tactics, because in addition to the required $100 application fee, once new Associates sign up with Defendants, Defendants pressure them to

2

purchase Defendants' financial and insurance products. Defendants train their Associates to sell financial and insurance products to the new Associates as soon as possible, since most new Associates leave the company shortly after signing up. Becoming an Associate requires no prior skill, knowledge, training, or experience, so the recruiting pool is nearly limitless. Therefore, recruiting is also a major revenue stream, through the combination of the required $100 application fee paid by all new Associates, new policies then aggressively marketed to the new Associates, and the further "mining" of the contacts and thus prospective further new Associates who regularly flow from all newly recruited Associates.

4.      In order to increase their profits. Defendants have unlawfully misclassified Associates as "independent contractors" rather than as employees, thereby evading all of the obligations of an employer to provide benefits, pay relevant taxes, and absorb various normal operating costs. Accordingly, Plaintiffs and other similarly situated and aggrieved individuals in the business of selling securities and insurance or training to be in the business of selling financial and insurance products ("Class Members"), have all been damaged as set forth hereafter. By this action. Plaintiffs seek to put an end to this illegal and oppressive conduct.

5.      Plaintiffs and Class Members are plainly employees under California law. As a condition precedent to employment, all Associates are required to sign identical, non-negotiable Associate Membership Agreements ("AMAs"). The AMAs set forth uniform rules and policies promulgated by Defendants, which subject Associates to strict control and incorrectly classifies them as independent contractors. Plaintiffs and Class Members signed the AMAs.

6.      Further, Defendants completely control the overall operation of the business by virtue of the following conduct, as examples only: they organize Associates into a hierarchy by starting them as Training Associates, and then set the criteria for promotions to Associate, Senior Associate, Marketing Director, and then Senior Marketing Director (promotions above Senior Marketing Director are to Executive-level positions); create and administer the commission plan under which all Associates are compensated; create the marketing and presentation materials, which Associates must use and may not alter; provide Associates written and interactive training; provide guidance on obtaining insurance and securities licenses; establish the exclusive list of

3

products the Associates can sell: and set prohibitions on selling competing products or joining other similar organizations.

7. Additionally. Defendants retain the exclusive authority to hire and fire every Associate. and the Associates have no rights to, and are prohibited from taking with them when they leave (whether voluntarily or by forced termination). the following: any of the other Associates they personally recruited for their purported independent business, any marketing or presentation materials, or any customer lists. including of customers they generated for their own purported independent business. In fact. the AMA explicitly provides that Defendants "own[] all rights in and to" Associates.

8. Because Defendants classify all of their Associates as independent contractors, they pay Associates. including Plaintiffs and Class Members. no wages. Instead. Associates work exclusively under Defendants' commission plan under which the majority of Associates do not earn enough to make minimum wage. and none receive overtime pay. Some Associates, such as those who do not yet have insurance or securities licenses. can earn no income at all because they cannot sell anything; however, while seeking their licenses, they can and are pushed to recruit new Associates for the benefit of the Defendants.

9. Additionally, as a result of Defendants' intentional misclassification. Associates like Plaintiffs and Class Members are forced to absorb thousands of dollars of costs which should be legally and appropriately borne by their employer, leaving many in a financially precarious position with limited take home pay—sometimes actually owing Defendants money instead of receiving money from Defendants. Associates are also deprived of the protection of workers' compensation benefits in the event of injury. as well as other benefits to which they are entitled. Moreover, because of its misclassification, Defendants fail to properly pay employment related California and Federal taxes that they would owe as an employer. These actions illegally reduce Defendants' costs of doing business and constitute unlawful and unfair business practices in violation of California's Unfair Competition Law.

10. By willfully and intentionally misclassifying Associates. including Plaintiffs and Class Members. as independent contractors. Defendants failed to pay them minimum wages.

4

failed to pay overtime wages, failed to provide mandatory meal and rest breaks, failed to maintain adequate records, failed to reimburse employees for reasonably incurred businesses expenses, made improper deductions from wages, failed to pay them all wages upon separation, failed to provide accurate wage statements, and improperly required them to pay application fees for employment.

11.    As such, Defendants' policies, practices, and customs violate the California Labor Code, IWC Wage Order No. 4, laws covered by the Private Attorneys General Act ("PAGA"), and constitute unlawful and/or unfair business practices in violation of the California Business & Professional Code, all of which have resulted in damages and losses to Plaintiffs and Class Members.

12.    Further, Plaintiffs and the Class Members rendered services to Defendants from which Defendants derived a benefit. Defendants, however, failed to compensate Plaintiffs and the Class Members for the reasonable value of such services. Thus, Defendants were unjustly enriched.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over this action under the California Constitution, Article VI, section 10, which grants the Superior Court, "Original jurisdiction in all causes except those given by statute to other courts." The statutes under which Plaintiffs bring this action do not specify any other basis for jurisdiction.

14.    Venue is proper in this judicial district under California Code of Civil Procedure §§ 395(a) and 395.5 as a portion of the acts and injuries complained of herein occurred in this County. Further, upon information and belief, neither Defendant resides in the state of California.

15.    On information and belief, Defendants operate a significant portion of their business within California, including within the County of San Francisco. The unlawful acts alleged herein have a direct effect on Plaintiffs and those similarly situated within the state of California and within the County of San Francisco. The claims alleged herein arise from work performed by Plaintiffs and the Class for Defendants within the state of California. All of the claims Plaintiffs assert for themselves and for the putative Class relate exclusively to work

5

1  performed within the State of California.

2  ## PARTIES

3     16.  Plaintiff Tricia Yeomans is a citizen and resident of the State of California, and has

4  been employed by Defendants from in or about February 2012 to the present. Plaintiff Yeomans

5  is a Senior Marketing Director for Defendants.

6     17.  Plaintiff Ismail Chraibi is a citizen and resident of the State of California, and was

7  employed by Defendants from in or about July 2014 to December 2016. At the time of his

8  separation from Defendants, Plaintiff Chraibi was a Senior Marketing Director.

9     18.  Plaintiff Adrian Rodriguez is a citizen and resident of the State of California, and

10  was employed by Defendants from in or about December 2015 to December 2016. At the time of

11  his separation from Defendants, Plaintiff Rodriguez was a Marketing Director.

12     19.  Plaintiff Robert Jenkins is a citizen and resident of the State of California, and has

13  been employed by Defendants from in or about December 2014 to the present. Plaintiff Robert

14  Jenkins currently a Marketing Director.

15     20.  Plaintiff Dorothy Jenkins is a citizen and resident of the State of California, and has

16  been employed by Defendants from in or about December 2014 to the present. Plaintiff Dorothy

17  Jenkins is currently a Marketing Director.

18     21.  Plaintiffs have been victimized by the policies, practices, and customs of

19  Defendants, which are complained of in this action, in ways that have deprived them of the rights

20  guaranteed to them by IWC Wage Order No. 4, the Labor Code, and the Bus. & Prof. Code.

21     22.  Defendant World Financial Group Insurance Agency, Inc. is a California

22  corporation doing business within the State of California. It has at all relevant times been an

23  employer covered by the Labor Code and IWC Wage Order No. 4.

24     23.  Defendant World Financial Group, Inc. is a Georgia corporation doing business

25  within the State of California. It has at all relevant times been an employer covered by the Labor

26  Code and IWC Wage Order No. 4.

27     24.  Upon information and belief, Defendants are wholly owned subsidiaries of

28  AEGON N.V. which operates under the Transamerica brand in the United States.

6

25.    Plaintiffs do not know the true names or capacities, whether individual, partner, or corporate, of the defendants sued herein as DOE defendants and for that reason, said defendants are sued under such fictitious names, and Plaintiffs pray for leave to amend this complaint when the true names and capacities are known. Plaintiffs are informed and believe, and based thereon allege, that each of the said fictitious defendants was responsible in some way for the matters alleged herein and proximately caused Plaintiffs and members of the general public and putative class to be subject to the illegal employment practices, wrongs, breaches, and injuries complained of herein.

26.    At all times pertinent hereto, each of the said DOE defendants participated in the doing of acts hereinafter alleged to have been done by the named Defendant ("Named Defendants and Doe Defendants are collectively referred to as "Defendants"); and furthermore, the Defendants, and each of them, were the agents, servants, and employees of each of the other Defendants, as well as the agents of all Defendants, and at all times herein mentioned, were acting within the course and scope of said agency and employment.

27.    Plaintiffs are informed and believe, and based thereon allege, that at all times pertinent hereto, each of the Defendants named herein was the agent, employee, alter ego, and/or joint venturer of, or working in concert with, each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity. To the extent the said acts, conduct, and omissions were perpetrated by certain Defendants, each of the remaining Defendants confirmed and ratified said acts, conduct, and omissions of the acting Defendants.

28.    At all times pertinent hereto, the acts and omissions of various Defendants, and each of them, concurred with and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages, as herein alleged. At all pertinent times, Defendants, and each of them, ratified each and every act or omission complained of herein. At all pertinent times, the Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

7

## SUBSTANTIVE ALLEGATIONS

**A.     Defendants' Business Model**

29.     Associates perform an integral and essential aspect of Defendants' business: they market financial and securities products sold through Defendants' affiliated companies, and recruit more Associates to work for the Defendants.

30.     To join Defendants' business, prospective Associates must sign the AMA and pay a $100 non-refundable application fee. Defendants currently boast that they have over 60,000 Associates while only having 225 "Home Office Employees."

31.     Upon information and belief, Associates account for 100% of Defendants' revenue and do all of Defendants' sales and recruiting work.

32.     In short, marketing financial and insurance products and recruiting new Associates is Defendants' principal business operation. Without the Associates, Defendants could not carry on their business.

33.     Additionally, Defendants control all material aspects of the enterprise and Associates. However, Defendants classify all of the Associates as independent contractors.

34.     Defendants compensate all of the Associates exclusively via Defendants' commission plan, and Associates are not paid separately for any required non-sales activity, nor are they provided with or compensated for meal or rest periods. They did not receive pay stubs that, among other issues, recorded their rate of pay, the number of hours that they worked, or broke out the total hours of compensable rest and recovery periods. Additionally, Associates are not reimbursed for necessary business expenses.

35.     New Associates who do not yet have their insurance licenses require approximately three to four months to become licensed, and during that interim period, they do not receive any compensation for their work for Defendants.

**B.     Defendants' Misclassification of Plaintiffs and Class Members**

36.     Under the applicable statutes and Wage Order regulations, Defendants are the "employer" of Plaintiffs and Class Members because Defendants have engaged them to do something of benefit for them or a third-party (Labor Code § 2750), and because they exercise

8

pervasive control over the Associates and retain all necessary control over the business enterprise. Further, Defendants exercise control over the wages and working conditions of the Associates, so as to render Plaintiffs and all Class Members employees.

37.     Additionally, under the applicable IWC Wage Order, as recently explained by the California Supreme Court in *Dynamex Operations West, Inc. v. Superior Court*, 2018 WL 1999120 (2018), a worker in California cannot be an independent contractor unless the hirer can prove: (A) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact; and, (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity.

38.     As discussed herein, Defendants cannot prove that they meet any of the above requirements, let alone all of them, as they must do under the *Dynamex* decision. Thus, as set forth hereafter, Defendants have misclassified Plaintiffs and Class Members as independent contractors instead of employees.

39.     **First**, Defendants retain and exercise significant control over Plaintiffs' and Class Members, including the details of the manner and means of the recruiting and marketing of financial and insurance products, the products Associates can sell, how Associates market and sell products, and all necessary aspects of Associates' working conditions.

40.     Defendants' relationship with all Associates is governed by the AMA, which is a uniform, non-negotiable contract. Defendants' uniform rules, policies, and procedures are disseminated to all Associates via the company's intranet, and are incorporated by reference into the AMA.

41.     However, when potential Associates are recruited and seek to join Defendants, they are given a pre-constructed packet of documents to fill out and sign that does not include the full AMA. Instead, the packet contains only the signature page of the AMA, along with other documents. The full AMA is not provided to prospective Associates, if at all, until after they have been approved and begin working as Associates.

9

42.     When Associates recruit prospective new Associates, the new Associates contract directly with Defendants, as opposed to contracting with the Associate who recruited the new Associate into the purported independent business. Associates cannot negotiate the AMA's terms with prospective Associates.

43.     Despite Defendants repeatedly promoting the fact that Associates can operate their own businesses, the AMA expressly provides that Defendants have the right to have final approval and control over all contracts, rights, and obligations that relate, in any way, to the Associate's relationship with Defendants, and that Defendants "shall have exclusive proprietary interest in, or ownership, of all Customers, and contractual relationships with other associates and the Product Providers."

44.     The AMA also expressly provides that Defendants "own[] all rights in and to the following: (i) WFG, which ... includes all persons who have an in force Associate Membership Agreement with WFG; (ii) the identities of and all lists of the members comprising WFG; and (iii) the identities of and all lists of the Customers of WFG (even though the Associate may not have recruited any of the members or produced any of the Customers) which constitute property owned solely by WFG." In sum and substance, the Defendants assert ownership over the Associates themselves—lock, stock and barrel.

45.     The AMA provides that Associates shall not use sales materials, media, letters, business cards, letterhead, without Defendants' express approval. Associates must order their materials directly through Defendants. Additionally, Defendants only allow Associates to have a website if it is through Defendants' approved website vendors, and Defendants control Associates' use of social networking and the manner in which they advertise.

46.     If an Associate sells a financial product to a customer, and the customer seeks a refund directly from Defendants, then under the AMA Defendants reserve the right and sole discretion to refund to any customer all or any part of payments made by the customer without consulting with or seeking input from the Associate. Moreover, under the AMA, the Associate is required to reimburse Defendants promptly for Defendants' expenses in connection with the refund and to repay Defendants promptly all commissions.

47.     Additionally, Defendants set the commission schedules for all Associates and, under the AMA, Defendants "may, from time to time, in the exercise of its sole discretion, and without notice, increase or decrease the rates and amounts of commissions or the sales position of Associate."

48.     Associates are instructed to use scripts created by Defendants to recruit new Associates.

49.     Under the AMA, all Associates are responsible for supervising, directing, and training downline associates to ensure that they are following Defendants' policies and procedures. In other words, all Associates have one or more people from Defendants who supervised, directed, oversaw, or controlled their work.

50.     The AMA requires all Associates to obtain errors and omissions and fidelity insurance coverage at their own expense, but it must be purchased through Defendants' contracted insurance companies.

51.     Associates have to spend an extraordinary amount of time in mandatory meetings—without being paid. The primary meetings are called Business Presentation Meetings ("BPM") and they take place twice a week for approximately 3 hours. Approximately once per month, Associates have a second meeting after the BPM, which lasts at least eight hours, and Associates are required to pay $150 to attend these meetings. Further, there are additional meetings after BPMs, and on other days of the week. As stated, Associates are not compensated for attending these meetings.

52.     Defendants have the sole authority to terminate Associates and may do so for any material breach of the AMA or Defendants' Rules, or for poor sales performance. Under the AMA, Associates cannot take their "downline" Associates, or any other Associates that they recruit, with them if they leave Defendants, and cannot solicit even their own purported customers to reduce or give up coverage under any products affiliated with Defendants after they leave the company, in order to offer to sell them products from any new entity they might work for going forward.

53.     **Second**, the service provided by Plaintiffs and Class Members—marketing financial and insurance products—is not an independently established trade such as a plumber or

11

electrician. Rather, they are integral and central to the operation of Defendants' core business. Defendants explicitly hold themselves out as a company that markets financial and insurance products. Plaintiffs and Class Members perform these services for Defendants, along with recruiting others to come into the Company under them.

54.     **Third**, Defendants prevent Plaintiffs and Class Members from engaging in an independently established trade, occupation, or business by refusing to allow them to use their platform with Defendants to market non-approved financial and insurance products. Defendants set prohibitions on selling competing products, joining other "hierarchical marketing organizations," engaging in various "prohibited outside business activities," and using the internet for any business without Defendants' approval.

55.     Finally, all Associates, including Plaintiffs and Class Members, are uniformly required to pay many employment-related expenses including, BPM fees, office expenses, expenses for marketing materials and business cards, client entertainment and development expenses, gas and other mileage related expenses, phone expenses (both cellular and landlines, as needed), and errors and omissions insurance.

56.     Despite the above, Defendants knowingly and intentionally misclassify Plaintiffs and Class Members as independent contractors when, under California law, they are employees who are working within Defendants' business, providing the service that Defendants exist to provide to their customers.

**C.     Defendants' Failure to Pay Overtime Wages**

57.     At all relevant times herein, California Labor Code §§ 510 and 1198 and IWC Wage Order No. 4, section 3, make it unlawful for an employer to employ persons without compensating them at one and a half times or double the employee's regular rate of pay depending on the number of hours worked by the employee in a daily or weekly basis.

58.     California Labor Code § 510 provides for overtime compensation at one-and-one-half times the regular hourly rate for hours worked in excess of eight (8) hours in a day or forty (40) hours in a week or for the first eight (8) hours worked on the seventh day of work.

59.     California Labor Code § 510 also provides for overtime compensation at twice the

12

1   regular hourly rate for hours worked in excess of twelve (12) hours in a day or in excess of eight

2   (8) hours in a day on the seventh day of work.

3      60.    IWC Wage Order No. 4, section 3, requires employers to pay their employees one

4   and a half times the employee's regular rate of pay for all hours worked in excess of eight (8)

5   hours in a workday or more than forty (40) hours in a workweek.

6      61.    IWC Wage Order No. 4, section 3, further requires that employers pay their

7   employees double the employees' regular rate of pay for all hours worked in excess of twelve

8   (12) hours in a workday and for all hours worked in excess of eight (8) hours on the seventh (7th)

9   consecutive day of work in a workweek.

10      62.    During the relevant time period, Plaintiffs and Class Members regularly worked in

11   excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty

12   (40) hours in a week, yet Defendants failed to pay Associates overtime compensation in violation

13   of California Labor Code §§ 510 and 1198 and Wage Order No. 4, section 3.

14   **D.    Defendants' Failure to Provide Meal Periods**

15      63.    At all times relevant hereto, California Labor Code §§ 226.7 and 512 and IWC

16   Wage Order No. 4, section 11, required employers to provide employees with a first meal period

17   of not less than thirty (30) minutes during which they are relieved of all duty before working more

18   than five (5) hours and a second meal period of not less than thirty (30) minutes during which

19   they are relieved of all duty before working more than ten (10) hours per day.

20      64.    At all times relevant hereto, California Labor Code § 226.7(b) and IWC Wage Order

21   No. 4, section 11, required employers to pay one hour of additional pay at the regular rate of

22   compensation for each employee and each workday that a proper meal period is not provided.

23      65.    Defendants did not have, maintain, or publish a compliant meal period policy.

24      66.    Further, by improperly classifying Plaintiffs and Class Members as independent

25   contractors, Defendants affirmatively represented to Plaintiffs and the Class that they had no

26   rights to receive the meal periods that were legally required to be provided by Defendants.

27      67.    Defendants failed to provide breaks, keep records of break times and did not inform

28   Plaintiffs and Class Members of their rights to a thirty (30) minute, uninterrupted, duty-free meal

13

1   break under California law.

2       68.    Defendants regularly failed to provide a timely thirty (30) minute off-duty meal

3   period to Associates when working more than five (5) hours in a day.

4       69.    Defendants further regularly failed to provide a second timely thirty (30) minute

5   meal period to Associates who worked more than ten (10) hours in a day.

6       70.    Defendants regularly failed to pay one hour of additional pay at the regular rate of

7   compensation for each Associate for each workday that a proper meal period was not provided.

8   **E.**    **Defendants' Failure to Permit and Compensate for Rest Periods**

9       71.    At all times relevant hereto, California Labor Code § 226.7 and IWC Wage Order

10  No. 4, section 12, required employers to authorize, permit, and provide a ten (10) minute paid rest

11  period for each four (4) hours of work, during which employees are relieved of all duty. Such

12  breaks are paid and counted as hours worked.

13      72.    At all times relevant hereto, California Labor Code § 226.7(b) and IWC Wage Order

14  No. 4, section 12, required employers to pay one hour of additional pay at the regular rate of

15  compensation for each employee and each workday that a proper rest period is not provided.

16      73.    Defendants did not have, maintain, or publish a compliant rest period policy.

17      74.    Further, by improperly classifying Plaintiffs and the Class as independent

18  contractors, Defendants affirmatively represented to Plaintiffs and the Class that they had no

19  rights to receive the rest periods that were legally required to be provided by Defendants.

20      75.    Defendants regularly failed to provide a ten (10) minute paid rest period for each

21  four (4) hours of work, during which the Associates should have been relieved of all duty.

22      76.    As a result of Defendants' compensation scheme, Defendants failed to compensate

23  their Associates for break times when breaks were not provided. Defendants' compensation

24  scheme did not permit paid rest breaks as mandated by California law.

25      77.    Defendants regularly failed to pay one hour of additional pay at the regular rate of

26  compensation for each Associate each workday that a proper rest period was not provided.

27  ///

28  ///

**F.    Defendants' Failure to Maintain Adequate Employment Records and Failure to Provide Accurate Itemized Wage Statements**

78.     At all times relevant hereto, Labor Code § 226 and IWC Wage Order No. 4, section 7, required employers to maintain adequate employment records and provide employees with accurate itemized wage statements showing gross wages, total hours worked, all applicable hourly rates worked during each pay period, the corresponding number of hours worked at each hourly rate, and the beginning and end of all meal breaks taken.

79.     Wage statements provided by Defendants  do not show all wages earned, all hours worked, or all applicable rates, in violation of the California Labor Code § 226, IWC Wage Order No. 4, section 7.

80.     Moreover, Defendants did not maintain adequate records of all wages earned, hours worked, and meal breaks taken.

**G.    Defendants' Failure to Indemnify Associates for Defendants' Business Expenses**

81.     At all times relevant hereto, California Labor Code § 2802 required employers to indemnify their employees for "all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer..."

82.     IWC Wage Order No. 4, section 9, requires employers to maintain tools and equipment required by the employer or that are necessary to the performance of the job.

83.     Defendants have failed to reimburse Plaintiffs and Class Members for all business-related expenses and costs Associates incurred, including but not limited to BPM fees, office expenses, expenses for marketing materials and business cards, client entertainment and development expenses, gas and other mileage related expenses, phone expenses (both cellular and landlines, as needed), and errors and omissions insurance.

**H.    Defendants' Unlawful Deductions from Associates' Wages**

84.     At all times relevant hereto, IWC Wage Order No. 4, section 8, required that no employer shall make any deduction from the wages of its employees or require any reimbursement from an employee for any cash shortage, breakage, or loss of equipment, unless it

15

1   can be shown that the shortage, breakage, or loss is caused by a dishonest or willful act, or by the
2   gross negligence of the employee.

3       85.    Wage statements provided by Defendants show deductions from Plaintiffs' and
4   Class Members' paychecks for work-related expenditures they incurred in direct consequence of
5   their job duties, in violation of the IWC Wage Order No. 4, section 8.

6   **I.    Defendants' Failure to Pay Wages Due on Termination**

7       86.    At all times relevant hereto, California Labor Code § 201 required an employer that
8   discharges an employee to pay compensation due and owing to said employee immediately upon
9   discharge. California Labor Code § 202 requires an employer to pay an employee who quits any
10  compensation due and owing to said employee within seventy-two (72) hours of an employee's
11  resignation. California Labor Code § 203 provides that if an employer willfully fails to pay
12  compensation promptly upon discharge or resignation, as required under §§ 201 and 202, then the
13  employer is liable for waiting time penalties in the form of continued compensation for up to
14  thirty (30) work days.

15      87.    Defendants willfully and knowingly failed to pay Plaintiffs Chraibi and Rodriguez
16  and Class Members, upon termination of employment, all accrued compensation including
17  repayment of all unlawful deductions from wages, payment of minimum wage compensation and
18  missed meal and rest periods compensation.

19      88.    Defendants further willfully failed to timely pay all compensation owed to
20  Associates upon termination, including, but not limited to, wages owed to Plaintiffs Chraibi and
21  Rodriguez, for performing unpaid tasks. As a result, Defendants are liable both for accrued wages
22  due at termination and for waiting time penalties.

23  **J.    Defendants' Intentional Misclassification of Associates as Independent Contractors**

24      89.    At all times relevant hereto, California Labor Code § 226.8 makes it unlawful for
25  an employer to willfully misclassify an individual as an independent contractor.

26      90.    Defendants willfully and intentionally misclassified Plaintiffs and Class Members
27  as independent contractors and in doing to, failed to provide the workers with all of the rights and
28  protections afforded them under the wage and hour laws, thereby resulting in all of the violations

1  alleged herein, including, but not limited to, unlawfully charging workers fees and making

2  unlawful deductions from workers' wages in violation of Labor Code provisions.

3  **K.    Defendants' Conduct Violated PAGA**

4          91.     Plaintiffs, on behalf of themselves and the proposed class members, will seek leave

5  at the appropriated time to amend this Complaint to claim all penalties permitted by the Labor

6  Code Private Attorneys General Act of 2004 ("PAGA"), Labor Code § 2698, *et seq*. By letter

7  dated December 19, 2018, Plaintiffs gave written notice electronically to the Labor and Workforce

8  Development Agency, and to Defendants via certified mail, of the specific provisions of the Labor

9  Code alleged to have been violated, including the facts and theories to support the alleged

10  violations. If the LWDA refuses to investigate the above claims, Plaintiffs will seek leave to

11  amend the Complaint to claim penalties under PAGA as permitted by statute.

12                          **CLASS ALLEGATIONS**

13          92.     Pursuant to Code of Civil Procedure § 382, Plaintiffs bring this action on behalf of

14  themselves and the following class:

15          All persons who at any time during the Class Period: (1) were designated by Defendants

16          as independent contractors; and (2) who performed work for Defendants in the State

17          California under the title of Training Associate, Associate, Senior Associate, Marketing

18          Director, or Senior Marketing Director.

19          93.     **Class Period**: The Class Period is defined as commencing at a date that is four

20  years prior to the date of the filing of this complaint and continuing from that point forward, until

21  the date that a final judgment has been entered in this matter.

22          94.     **Numerosity**: The members of the class are so numerous that joinder of all members

23  would be impractical, if not impossible. The identities of the members of the class are readily

24  ascertainable by review of Defendants' records, including, without limitation, payroll records,

25  employment application forms, work orders, work assignments, and other documents, vouchers

26  and receipts issued to the Class Members by Defendants.

27          95.     **Adequacy of Representation**: The named Plaintiffs are fully prepared to take all

28  necessary steps to represent, fairly and adequately, the interests of the above-defined class.

17

Plaintiffs' attorneys are ready, willing, and able to fully and adequately represent the class and individual Plaintiffs. Plaintiffs' attorneys have prosecuted, tried, and settled wage-and hour class actions in the past and currently have dozens of wage-and-hour class actions pending in the California state and federal courts, as well as elsewhere in the United States.

96.     Defendants uniformly administered a company-wide policy and practice of misclassifying Plaintiffs and the putative Class Members as "independent contractors" and: (a) not paying Plaintiffs and the class all wages earned, including minimum wages and overtime wages, (b) failing to provide mandatory meal and rest breaks and/or failing to pay premium wages for missed meal and/or rest periods, (c) failing to keep proper records as required by the Labor Code and applicable Wage Order regulations, (d) requiring Plaintiffs and the class members to incur and pay for Defendants' necessary business expenses, without reimbursement therefor, (e) making unlawful deductions from Plaintiffs' and class members' wages, (f) failed to pay them all wages upon separation; (g) failing to provide accurate wage statements, (h) failing to compensate Plaintiffs for the reasonable value of their services provided, (i) requiring prospective Associates to pay a $100 application fee, (j) engaging in unfair business practices, and (k) violating wage and hour laws that carry civil penalties recoverable under PAGA.

97.     Plaintiffs are informed and believe, and based thereon allege, that this enterprise-wide conduct was and is accomplished with Defendants' advance knowledge of the misclassification, and arises out of Defendants' designed intent to willfully and intentionally fail to accurately record proper rates of pay, hours worked, net wages, and deductions.

98.     Plaintiffs are informed and believe and based thereon allege, that Defendants had a consistent and uniform policy, practice, and/or procedure of willfully failing to comply with Labor Code §§ Code §§ 200-203, 226, 226.7, 226.8, 450, 510, 512, 1174, 1194, 1197, 1198, 2802, as well as other violations that constitute unfair and/or unlawful conduct under Bus. & Prof. Code §§ 17200 *et seq.*, and the governing Wage Order regulations.

99.     **Common Questions of Law and Fact:** There are predominant common questions of law and fact and community of interest amongst Plaintiffs and the claims of the class, concerning Defendants' treatment of them, including but not limited to:

18

a.   Whether Class Members were improperly classified as independent contractors instead of employees;

b.   Whether Defendants failed to pay for all time worked by virtue of its commission-only compensation system that failed to compensate Class Members adequately;

c.   Whether Defendants failed to pay for all time worked by virtue of paying nothing for time worked on required duties other than sales and marketing;

d.   Whether the Class Members performed services for Defendants;

e.   Whether Defendants' engaged Class Members to do work;

f.   Whether Defendants' suffered or permitted the Class Members to do work;

g.   Whether Class Members were free from the control and direction of Defendants in connection with their work;

h.   Whether Class Members' work is outside the usual course of the Defendants' business;

i.   Whether Class Members are engaged in an independently established trade, occupation, or business of the same nature as that involved in the work they perform;

j.   Whether Defendants retained all necessary control over their business operations;

k.   Whether the compensation paid to Class Members, based on hours worked, was less than the applicable minimum wage or, where applicable, less than the proper overtime wage;

l.   Whether the Class Members were entitled to mandatory meal and rest breaks, and if so, whether they were made available or provided, and whether premium wages should have been paid when meal and/or rest periods were missed;

m.   Whether Class Members ever received a paid rest period;

n.   Whether Defendants kept adequate employment records;

o.   Whether the Class Members were improperly required to incur Defendants' necessary business expenses without reimbursement therefor;

p.   Whether Defendants made illegal deductions from the Class Members' earnings;

19

q.    Whether Defendants provided accurate and itemized wage statements;

r.    Whether Defendants required prospective Associates to pay a $100 application fee;

s.    Whether the Defendants' policies and practices, as described herein, were unlawful and/or unfair business practices; and

t.    Whether the Defendants were unjustly enriched by failing to pay a reasonable value to Plaintiffs and putative Class Members for their services.

100.    **Typicality:** The claims of the Plaintiffs are typical of the claims of all members of the class. Plaintiffs are members of the putative class. Plaintiffs have suffered and incurred damages and losses as a result of the alleged violations of the applicable Wage Order, the Labor Code and the Bus. & Prof. Code and the failure to be reasonably compensated for their services, as herein alleged.

101.    The Labor Code and Wage Order upon which Plaintiffs base their claims are remedial in nature. These laws and labor standards serve an important public interest in establishing minimum working conditions and standards. These laws and labor standards protect the average worker from exploitation by employers who may seek to take advantage of superior economic and bargaining power in setting onerous terms and conditions of employment. Such statutes and regulations are designed to defeat rather than implement express or implied agreements that depart from the statutory scheme, in the employment contract.

102.    The nature of this action and the format of laws available to Plaintiffs and members of the class identified herein make the class action format a particularly efficient and appropriate procedure to redress the wrongs alleged herein and, therefore, is the superior means of redress of Defendants' alleged wrongdoings. If each Plaintiff and member of the putative class were required to file an individual lawsuit, the Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual plaintiff by virtue of their vastly superior financial and legal resources. Requiring each class member to pursue an individual remedy would also discourage the assertion of lawful claims by workers who would be disinclined to file an action against their former and/or current employer due to a very real and justifiable fear of retaliation and permanent damage to their careers at

20

1   subsequent employments. The filing of individual lawsuits would also create an unnecessary
2   strain on existing judicial resources and raise the potential for inconsistent findings and verdicts
3   among the various litigations.

4       103.    The prosecution of separate actions by the individual Class Members, even if
5   possible, would create a substantial risk of (a) inconsistent or varying adjudications with respect
6   to individual Class Members against the Defendants and which would establish potentially
7   incompatible standards of conduct for the Defendants, and/or (b) adjudications with respect to
8   individual Class Members which would, as a practical matter, be dispositive of the interests of
9   other Class Members not parties to the adjudications or which would substantially impair or
10  impede the ability of the Class Members to protect their interests. Further, the claims of the
11  individual members of the class are not sufficiently large to warrant vigorous individual
12  prosecution considering all of the concomitant costs and expenses.

13      104.    Such a pattern, practice, and uniform administration of enterprise-wide policies and
14  practices regarding illegal and improper compensation, as described herein, creates an entitlement
15  to recovery by the Plaintiffs and the Class Members identified herein, in a civil action, for the
16  unpaid balance of the full amount of unpaid and/or withheld compensation, reimbursement of
17  expenses, including interest thereon, applicable penalties and premium pay, reasonable attorneys'
18  fees, and costs of suit according to the mandates of, *inter alia*, Labor Code §§ 226, 1194, and
19  Code of Civil Procedure § 1021.5.

20      105.    Proof of common business practices and/or factual patterns, which the named
21  Plaintiffs experienced and are representative of, will establish the right of each of the members of
22  the proposed class to recover on the causes of action alleged herein.

23      106.    The putative class is commonly entitled to a specific fund with respect to the
24  compensation and expenses illegally and unfairly retained by Defendants. The class is commonly
25  entitled to restitution of those funds being improperly withheld by Defendants. This action is
26  brought for the benefit of the entire class and will result in the creation of a common fund.

27  ///
28  ///

## FIRST CAUSE OF ACTION

### FOR DECLARATORY RELIEF

### (Labor Code § 3357)

107.   Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs of this complaint, as though set forth in full at this point.

108.   Pursuant to California Labor Code § 3357, Plaintiffs and Class Members are entitled to a presumption that they are in fact Defendants' employees. The same holds true under the applicable wage order. *See Dynamex Operations West, Inc. v. Superior Court*, 2018 WL 1999120 (2018).

109.   An actual controversy has arisen between Plaintiffs and the Class Members, on one hand, and Defendants on the other, as to whether Defendants misclassified Plaintiffs and Class Members as "independent contractors" when, in fact, Plaintiffs and Class Members were and are Defendants' employees.

110.   Plaintiffs and the Class Members seek declaratory relief against Defendants herein and in Plaintiffs' favor, declaring that they were and are Defendants' employees and, further, declaring Defendants' practices to be unlawful.

## SECOND CAUSE OF ACTION

### FOR FAILURE TO PAY MINIMUM WAGE

### (Labor Code §§ 1194, 1197, and Wage Order)

111.   Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs of this complaint, as though set forth in full at this point.

112.   Notwithstanding the unconscionable policies and procedures that Defendants require the Associates to agree to as a condition of employment, Plaintiffs and Class Members are Defendants' employees because, *inter alia*, Defendants engage, suffer, or permit the Plaintiffs and Class Members to work for them, yet retain all necessary control over their business and exercise significant control over the wages and all aspects of the working conditions of the Plaintiffs and Class Members.

113.   When Plaintiffs' and Class Members' working hours are divided into the amount of

22

1   compensation paid by Defendants. the result is an hourly rate that is less than the minimum wage

2   that set by the IWC Wage Order. This result is further exacerbated when the unlawful deductions

3   and unreimbursed business expenses are deducted from the gross wages paid.

4       114.   Furthermore, insofar as Plaintiffs and Class Members are only paid commission.

5   they are not paid at all for time worked not covered by the commission system, including time

6   spent on required tasks such as recruiting, attending meetings and training, and training other

7   Associates. Additionally, and because Defendants have no rest break policy. Plaintiffs and Class

8   Members are not paid, at all, for the rest periods that the Labor Code and Wage Order designate

9   as "hours worked." In each and every instance, the workers receive less than the minimum wage

10   for their mandated rest periods.

11       115.   Labor Code § 1197 provides: "The minimum wage for employees fixed by the

12   commission is the minimum wage to be paid to employees. and the payment of a lesser wage than

13   the minimum so fixed is unlawful."

14       116.   Labor Code § 1194 provides: "Notwithstanding any agreement to work for a lesser

15   wage. any employee receiving less than the legal minimum wage or the legal overtime

16   compensation applicable to the employee is entitled to recover in a civil action the unpaid balance

17   of the full amount of this minimum wage or overtime compensation, including interest thereon,'

18   reasonable attorney's fees. and costs of suit."

19       117.   Labor Code § 1194.2(a) provides: "In any action under … Section 1194 to recover

20   wages because of the payment of a wage less than the minimum wage fixed by an order of the

21   commission. an employee shall be entitled to recover liquidated damages in an amount equal to

22   the wages unlawfully unpaid and interest thereon."

23       118   Insofar as Defendants, and each of them, failed to pay Plaintiffs and Class Members

24   an amount that was at least the same as the applicable minimum wage. Defendants. and each of

25   them, were and are in violation of the applicable wage and hour laws.

26       119.   Wherefore. Plaintiffs and Class Members class are entitled to damages in the sum

27   of unpaid wages. liquidated damages. and the other relief provided by the Labor Code. in an

28   amount according to proof at the time of trial.

## THIRD CAUSE OF ACTION

### FOR FAILURE TO PAY OVERTIME

#### (Labor Code §§ 510, 1194, 1198, and Wage Order)

120.   Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs of this complaint, as though set forth in full at this point.

121.   Under California law, eight hours a day constitutes a day's work. Any work in excess of eight hours a day or 40 hours per week must be compensated at the rate of one-and-one-half times the worker's regular hourly rate. Any work in excess of 12 hours in a work day must be compensated at the rate of two times the worker's regular hourly rate. (Labor Code §§ 510(a), 1198, and IWC Wage Order No. 4). Likewise, the DLSE has published the analogous formula to be utilized for piece rate workers.

122.   Plaintiffs and Class Members regularly worked more than eight hours a day and 40 hours per week, and often more than 12 hours a day. Plaintiffs and the Class Members were entitled to premium pay for the overtime hours worked.

123.   Plaintiffs and the members of the putative class are entitled to recover their unpaid overtime wages, including interest thereon, reasonable attorneys' fees, and costs of suit, pursuant to Labor Code § 1194(a).

## FOURTH CAUSE OF ACTION

### FOR FAILURE TO PROVIDE MEAL BREAKS

#### (Labor Code §§ 226.7, 512, and Wage Order)

124.   Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs of this complaint, as though set forth in full at this point.

125.   Under California law, and as applicable hereto, no worker may be compelled to labor for a work period of five or more hours without being provided with a 30-minute, duty-free meal break. Likewise, no worker may be compelled to work for more than 10 hours in a single day, without being provided with a second, 30-minute, duty-free meal break. Labor Code § 512 and Part 11 of Wage Order No. 4.

126.   Defendants failed to provide the required meal breaks to Plaintiffs and Class

24

Members, even though they regularly labored for work periods of more than five hours, without a meal break, and workdays of more than 10 hours, without a second meal break. Plaintiffs allege, on information and belief, that Defendants had no policy, procedure, or practice with regard to the provision of meal breaks to the Associates and that the lack of such policy, procedure, and practice led to the result that none of the Associates were provided with the required meal breaks.

127.    Pursuant to Labor Code § 226.7(b), each Plaintiff and each member of the putative class is entitled to recover from Defendants the sum of one hour of pay at their regular rate for each meal period that was not provided by Defendants.

## FIFTH CAUSE OF ACTION

### FOR FAILURE TO PROVIDE PAID REST BREAKS

#### (Labor Code §§ 226.7, 512, and Wage Order)

128.    Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs of this complaint, as though set forth in full at this point.

129.    Under California law, and as applicable hereto, employers must authorize and provide a paid, ten-minute, duty-free rest break for every four hours of work in a workday. (Part 12 of Wage Order No. 4.) The rest period shall be counted as "hours worked." (*Ibid.*)

130.    Defendants failed to authorize and/or provide the required rest breaks to Plaintiffs and the Class Members, even though Plaintiffs and the Class Members regularly labored for work periods of more than four hours without a rest break, and workdays of more than 10 hours without additional rest breaks. Plaintiffs allege, on information and belief, that Defendants had no policy, procedure, or practice that affirmatively authorized rest breaks to Associates, and in fact Defendants affirmatively represented that Plaintiffs and the Class Members were Independent Contractors not entitled to be provided rest breaks by Defendants. Defendants' uniform policies, procedures and practices constitute a failure to authorize such breaks and led to the result that required rest breaks were not provided.

131.    Further, as Defendants only compensated Plaintiffs and the Class Members based on commissions and thus, did not have a mechanism to compensate Plaintiffs and Class Members for rest periods, even if taken, then Plaintiffs and Class Members could not and did not receive

25

1  paid rest periods as required by California law.

2      132.   Pursuant to Labor Code § 226.7(b), each Plaintiff and each Class Member is entitled

3  to recover from Defendants the sum of one hour of pay at their regular rate for each paid rest

4  period that was not authorized and/or provided by Defendants.

5  **SIXTH CAUSE OF ACTION**

6  **FOR FAILURE TO MAINTAIN REQUIRED BUSINESS RECORDS**

7  **(Labor Code § 1174, Wage Order)**

8      133.   Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs of

9  this complaint, as though set forth in full at this point.

10      134.   Labor Code § 1174 and IWC Wage Order No. 4, section 7(A) require every

11  employer keep, at a central location, accurate information with respect to each employee.

12      135.   Pursuant to IWC Wage Order No. 4, section 7(A) Defendants are required to keep

13  the following employee information: (a) full name, home address, occupation, and social security

14  number; (b) birth date, if under 18 years, and designation as a minor; (c) time records showing

15  when the employee begins and ends each work period. Meal periods, split shift intervals and total

16  daily hours worked shall also be recorded; (d) total wages paid each payroll period, including

17  value of board, lodging, or other compensation actually furnished to the employee; (e) total hours

18  worked in the payroll period and applicable rates of pay; and (f) when a piece rate or incentive

19  plan is in operation, piece rates or an explanation of the incentive plan formula shall be provided

20  to employees. An accurate production record shall be maintained by the employer.

21      136.   Pursuant to Labor Code § 1174, every employer in the state shall: "(c) keep a record

22  showing the names and addresses of all employees employed and the ages of all minors; and (d)

23  Keep, at a central location in the state or at the plants or establishments at which employees are

24  employed, payroll records showing the hours worked daily by and the wages paid to, and the

25  number of piece-rate units earned by and any applicable piece rate paid to, employees employed

26  at the respective plants or establishments." These records must be kept in accordance with rules

27  established for this purpose by Labor Commissioner, but in any case shall be kept on file for not

28  less than three years.

26

137.  Defendants violated the foregoing provisions, in that Defendants failed to maintain, at a central location. Plaintiffs' aforementioned information with respect to employment, and as a result violated both the Labor Code and IWC Wage Order. Such conduct is "unlawful" and Plaintiffs and the Class Members are entitled to restitution under the Unfair Business Practices Act for all sums unlawfully withheld from their wages on account of Defendants' unlawful conduct.

138.  Plaintiffs allege, on information and belief, that Defendants have applied this same policy, business practice, and/or custom to all Class Members.

## SEVENTH CAUSE OF ACTION

## FAILURE TO REIMBURSE FOR NECESSARY BUSINESS EXPENSES

### (Labor Code § 2802)

139.  Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs of this complaint, as though set forth in full at this point.

140.  Under California law, workers are entitled to be indemnified "for all necessary expenditures or losses incurred by them in direct consequence of the discharge of their duties."

141.  As previously alleged herein, Defendants maintain uniform policies, procedures, and practices requiring Plaintiffs and Class Members to incur significant, substantial, and ongoing necessary business expenses that rightfully should have been borne by Defendants, and Defendants have failed to reimburse Plaintiffs and Class Members for the said expenses.

142.  Because these necessary expenses were incurred by Plaintiffs and Class Members in direct consequence of the discharge of their duties, Plaintiffs and Class Members are entitled to be indemnified, pursuant to Labor Code § 2802(b), with interest thereon beginning from the date that each expense was incurred.

## EIGHTH CAUSE OF ACTION

## FOR IMPROPER DEDUCTIONS FROM WAGES

### (Labor Code § 226; Wage Order)

143.  Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs of this complaint, as though set forth in full at this point.

27

144.   California law prohibits an employer from deducting anything from an employee's wages other than those deductions explicitly permitted by law. The fees deducted from Plaintiffs' and Class Members' wages are not explicitly permitted by law. Nevertheless, Defendants' custom, policy and practice was and is to deduct these fees from wages being paid to Plaintiffs and Class Members. This deduction was and is an illegal deduction from wages under California law.

145.   Further, California law prohibits an employer, in the absence of dishonesty or gross negligence by an employee, from making any deduction or requiring any reimbursement for any cash shortage, breakage, or loss of equipment. However, Defendants had and have a policy, custom, and/or practice of making such unlawful deductions and requiring unlawful reimbursements from Plaintiffs and Class Members.

146.   Plaintiffs and Class Members are entitled to recover from Defendants the amounts improperly and illegally deducted from their compensation, as well as the penalty specified in Labor Code § 226(e), an injunction to enjoin the continuation of this policy, practice and/or custom, and an award of reasonable costs and attorneys' fees.

## NINTH CAUSE OF ACTION

### FOR INADEQUATE AND/OR FAILURE TO PROVIDE

### ACCURATE, ITEMIZED WAGE STATEMENTS

### (Labor Code §§ 226)

147.   Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs of this complaint, as though set forth in full at this point.

148.   Labor Code § 226 makes it unlawful for an employer to fail to provide accurate and itemized wage statements to its employees.

149.   Pursuant to California Labor Code § 226(a), Plaintiffs and Class Members were entitled to receive, semimonthly or at the time of each payment of wages, an accurate itemized statement showing, *inter alia*: (a) gross wages earned; (b) net wages earned; (c) all applicable hourly rates in effect during the pay period; and (d) the corresponding number of hours worked at each hourly rate by the employee.

150.   Defendants violated the foregoing provisions, in that Defendants failed to provide

28

1   Plaintiffs and Class Members with accurate itemized statements in accordance with California

2   Labor Code § 226(a) by providing Plaintiffs and Class Members with wage statements with

3   inaccurate entries for hours worked, corresponding rates of pay, and total wages earned, as a result

4   of the unlawful labor and payroll practices described herein. Plaintiffs and Class Members are

5   therefore entitled to the statutory penalty set forth in subdivision (e) of section 226, or actual

6   damages, as well as an injunction against Defendants, under subdivision (h), plus an award of

7   costs and reasonable attorney's fees.

8                                **TENTH CAUSE OF ACTION**

9                              **FOR WAITING TIME PENALTIES**

10                                **(Labor Code §§ 201-203)**

11          151.    Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs of

12   this complaint, as though set forth in full at this point.

13          152.    California Labor Code § 203 provides that if an employer willfully fails to pay

14   compensation promptly upon discharge, as required by California Labor Code §§ 201 or 202, then

15   the employer is liable for waiting time penalties in the form of continued compensation of up to

16   thirty (30) work days.

17          153.    Plaintiff is informed and believes, and thereon alleges, that Defendants, in violation

18   of California Labor Code § 203, consistently and willfully failed to timely pay all Class Members

19   whose employment was terminated all wages due and owing at the time of termination of

20   employment, including basic minimum wages and premium pay due for meal period and rest

21   period wages as set forth hereinabove.

22          154.    Plaintiffs and Class Members therefore seek the damages or penalties to which they

23   are entitled pursuant to California Labor Code § 203, the exact amount of which is to be

24   determined at trial, plus an award of costs and reasonable attorney's fees.

25                             **ELEVENTH CAUSE OF ACTION**

26                               **FOR UNFAIR COMPETITION**

27                             **(Bus. & Prof. Code §§ 17200, *et seq.*)**

28          155.    Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs of

                                              29

1    this complaint, as though set forth in full at this point.

2       156.   Defendants have engaged and continue to engage in unfair and unlawful business

3    practices in California by practicing, employing, and utilizing the policies, customs, and practices

4    outlined above, including, to wit: (1) not paying all wages, including minimum wage, and

5    overtime; (2) failing to pay all earned wages in a timely fashion; (3) failing to pay premium wages

6    for meal and rest breaks not provided; (4) making improper deductions from compensation and

7    failing to keep proper records as required by law; (5) failing to reimburse and/or indemnify

8    Plaintiffs and Class Members for Defendants' necessary business expenses; (6) improperly

9    classifying Plaintiffs and Class Members as independent contractors; and (7) Failing to pay all

10   wages owed upon termination.

11       157.   Additionally, Defendants have engaged and continue to engage in unfair and

12   unlawful business practices by requiring prospective Associates to pay a $100 application fee, in

13   violation of Labor Code § 450, which provides that:

14          (a) No employer, or agent or officer thereof, or other person, may compel or coerce

15          any employee, or applicant for employment, to patronize his or her employer, or any

16          other person, in the purchase of any thing of value.

17          (b) For purposes of this section, to compel or coerce the purchase of any thing of value

18          includes, but is not limited to, instances where an employer requires the payment of a

19          fee or consideration of any type from an applicant for employment for any of the

20          following purposes:

21              (1) For an individual to apply for employment orally or in writing.

22              (2) For an individual to receive, obtain, complete, or submit an application

23              for employment.

24              (3) For an employer to provide, accept, or process an application for

25              employment.

26       158.   Plaintiffs and Class Members have each suffered actual harm as a result of

27   Defendants' unfair and/or unlawful business practices. Plaintiffs and the Class Members have

28   been deprived of wages actually earned but wrongfully and unlawfully retained by Defendants.

159.     Defendants' utilization of such unfair and unlawful business practices constitutes unfair, unlawful competition and provides an unfair advantage over Defendants' competitors who follow the law.

160.     Plaintiffs seek, on their own behalf, on behalf of the Class Members, full restitution of monies, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by the Defendants by means of the unfair practices complained of herein.

161.     The acts complained of herein occurred within the last four years preceding the filing of this action.

162.     Plaintiffs are informed and believe, and based thereon allege, that at all times pertinent hereto, Defendants have engaged in unlawful, deceptive, and unfair business practices, a proscribed by Bus. & Prof. Code §§ 17200 *et seq.*, including those set forth hereinabove, thereby depriving Plaintiffs and other members of the general public of the wages, minimum working standards and conditions due to them under California's laws and Industrial Welfare Commission wage orders specifically described herein.

163.     Plaintiffs also seek injunctive relief and on behalf of the general public, to prohibit Defendants from continuing to engage in the unlawful, deceptive, and unfair business practices complained of herein, as Defendants' strong emphasis on heavy recruitment harms the public at large by ensnaring thousands of individuals into Defendants' unlawful scheme.

## TWELFTH CAUSE OF ACTION

### FOR UNJUST ENRICHMENT

164.     Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs of this complaint, as though set forth in full at this point.

165.     Plaintiffs and the Class Members conferred a benefit upon Defendants by working on their behalf without compensation, paying Defendants' business expenses, and paying Defendants an unlawful $100 application fee.

166.     Defendants had an appreciation or knowledge of the benefit conferred by Plaintiffs and the Class Members.

167.     Defendants accepted and retained the benefit under circumstances as to make it

31

1  inequitable for Defendants to retain the benefit without payment of its value.

## THIRTEENTH CAUSE OF ACTION

### FOR INTENTIONAL MISCLASSIFICATION

#### (Labor Code § 226.8)

168.    Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs of this complaint, as though set forth in full at this point.

169.    Defendants engaged in conduct designed to avoid employee status for the Plaintiffs and Class Members by willfully misclassifying them as independent contractors, as herein alleged, in violation of Labor Code § 226.8(a), and in doing so unlawfully forced deductions from their compensation, either directly or indirectly, including but not limited to BPM fees, office expenses, expenses for marketing materials and business cards, client entertainment and development expenses, gas and other mileage related expenses, phone expenses (both cellular and landlines, as needed), and errors and omissions insurance.

170.    Wherefore, Plaintiffs and the Class Members are entitled to a determination from the Court that Defendants have engaged in violations of Labor Code § 226.8(a). Plaintiffs and the Class Members likewise are entitled to recover the penalties permitted by Labor Code § 226.8(b), in addition to any other remedies they may have on account of the misclassification.

171.    As alleged herein, Defendants engaged in a pattern and/or practice of violations of Labor Code § 226.8(a) and Plaintiffs and the Class Members are entitled to a determination from the Court that Defendants' violations of the statute were and are part of a pattern and/or practice of misclassifying Plaintiffs and Class Members as independent contractors. Plaintiffs and Class Members likewise are entitled to recover the penalties permitted by Labor Code § 226.8(c), in addition to any other remedies they may have on account of the misclassification.

## FOURTEENTH CAUSE OF ACTION

### FOR VIOLATIONS OF THE PRIVATE ATTORNEYS GENERAL ACT

#### (Labor Code § 2699)

172.    Under Labor Code § 2699, any employee aggrieved by an employer's violation of the Labor Code and/or applicable IWC Wage Order has the right to file an action on behalf of all

32

1   aggrieved employees for the penalties established by Section 2699 and/or other Labor Code
2   sections. The aforementioned wrongful acts and omissions of Defendants were violations of the
3   Labor Code and/or applicable IWC Wage Order, as set forth herein. Plaintiffs are current or former
4   employees who have been aggrieved by Defendants' violations of the aforementioned Labor Code
5   and/or Wage Order provisions, and Class Members are similarly aggrieved employees. As set
6   forth hereinabove, Plaintiffs have complied with all pre-filing requirements of Labor Code §
7   2699.3, and will seek leave to amend this Complaint to add a claim for civil penalties under PAGA
8   if the LWDA declines to investigate.

9                               **PRAYER FOR RELIEF**

10          WHEREFORE, Plaintiffs pray for judgment for themselves and all others on whose behalf
11   this suit is brought against Defendants, jointly and severally, as follows:

12          1.  For an order certifying the proposed Class;

13          2.  For an order appointing Plaintiffs as the representatives of the Class;

14          3.  For an order appointing Counsel for Plaintiffs as Class counsel;

15          4.  On the First Cause of Action, a declaration that Defendant's conduct violated and
16              violates California law; a declaration that Plaintiffs and the class members are
17              Defendants' employees and entitled to the protections of the Labor Code and applicable
18              Wage Order; and restitution and disgorgement of all sums improperly retained by
19              Defendants as a result of their misclassification of Plaintiffs and class members;

20          5.  On the Second Cause of Action, for damages and/or penalties, including liquidated
21              damages, as provided by statute, in an amount according to proof at the time of trial;

22          6.  On the Third Cause of Action, for damages and/or penalties, as provided by statute, in
23              an amount according to proof at the time of trial;

24          7.  On the Fourth Cause of Action, for damages and/or penalties, as provided by law, in an
25              amount according to proof at the time of trial;

26          8.  On the Fifth Cause of Action, for damages and/or penalties, as provided by law, in an
27              amount according to proof at the time of trial;

28          9.  On the Sixth Cause of Action, for damages and/or penalties, as provided by law, in an

amount according to proof at the time of trial:

10. On the Seventh Cause of Action, for reimbursement of all necessary business expenses advanced by Plaintiffs and the class members, in an amount according to proof at the time of trial;

11. On the Eighth Cause of Action, for damages and/or penalties, as provided by law, and for an injunction enjoining Defendants from continuing to make unlawful deductions from the Associates' compensation, interest thereon, and reasonable costs and attorneys' fees, as provided by Labor Code § 226;

12. On the Ninth Cause of Action, for damages and/or penalties, as provided by law, in an amount according to proof at the time of trial;

13. On the Tenth Cause of Action, for damages and/or penalties, as provided by law, in an amount according to proof at the time of trial;

14. On the Eleventh Cause of Action, for restitution to Plaintiffs and other similarly situated members of the general public of all funds unlawfully acquired by Defendants by means of any acts or practices declared by the Court to be in violation of Bus. & Prof. Code §§ 17200 *et seq.*, for an injunction to prohibit Defendants from engaging in the unfair business practices complained of herein, for an injunction requiring Defendants to give notice, to persons to whom restitution is owing, of the means by which to file and make claim for restitution;

15. On the Twelfth Cause of Action, for quasi-contract recovery for services rendered;

16. On the Thirteenth Cause of Action, for all damages and penalties as provided by Labor Code § 226.8;

17. On the Fourteenth Cause of Action, for penalties pursuant to statute as set forth in California Labor Code California Labor Code §§ 201-204, 223, 226, 226.3, 226.4, 226.7, 450, 510, 512, 558, 1174, 1174.5, 1193.5, 1193.6, 1194, 1194.5, 1198, and 2698-2699, and for costs and attorney's fees;

18. On all causes of action, for attorneys' fees and costs, as provided by Labor Code §§ 218.5, 226, 1194, and Code of Civil Procedure § 1021.5;

34

19. On all causes of action. for the penalties permitted by law, and in particular, under PAGA: and.

20. For all such other and further relief as the Court may deem just and proper.

DATED: December 21, 2018

MARLIN & SALTZMAN, LLP

By: _____
    Stanley D. Saltzman, Esq.
    Adam M. Tamburelli, Esq.

    Attorneys for Plaintiffs and the putative Class

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable.

DATED: December 21, 2018

MARLIN & SALTZMAN, LLP

By: _____
    Stanley D. Saltzman, Esq.
    Adam M. Tamburelli, Esq.

    Attorneys for Plaintiffs and the putative Class

35

CLASS ACTION COMPLAINT

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Stanley D. Saltzman, Esq. (SBN 90058)<br>Adam M. Tamburelli, Esq. (SBN 301902)<br>MARLIN & SALTZMAN, LLP<br>29800 Agoura Road, Suite 210<br>Agoura Hills, CA  91301<br>  TELEPHONE NO.: (818) 991-8080   FAX NO.: (818) 991-8081<br>ATTORNEY FOR *(Name):* Plaintiffs | ENDORSED<br>**FILED**<br>San Francisco County Superior Court<br><br>DEC 28 2018<br><br>CLERK OF THE COURT<br>KALENE APOLONIO<br>BY:_____<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA  94102
BRANCH NAME: CIVIC CENTER COURTHOUSE

CASE NAME:  YEOMANS v. WORLD FINANCIAL GROUP.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: CGC-18-572397 |
|---|---|---|---|---|
| X Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | Limited<br>(Amount<br>demanded is<br>$25,000 or less) | Counter | Joinder | JUDGE: |
| | | Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- Auto (22)
- Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- Asbestos (04)
- Product liability (24)
- Medical malpractice (45)
- Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- Business tort/unfair business practice (07)
- Civil rights (08)
- Defamation (13)
- Fraud (16)
- Intellectual property (19)
- Professional negligence (25)
- Other non-PI/PD/WD tort (35)

**Employment**
- Wrongful termination (36)
- X Other employment (15)

**Contract**
- Breach of contract/warranty (06)
- Rule 3.740 collections (09)
- Other collections (09)
- Insurance coverage (18)
- Other contract (37)

**Real Property**
- Eminent domain/inverse condemnation (14)
- Wrongful eviction (33)
- Other real property (26)

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38)

**Judicial Review**
- Asset forfeiture (05)
- Petition re: arbitration award (11)
- Writ of mandate (02)
- Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- Antitrust/Trade regulation (03)
- Construction defect (10)
- Mass tort (40)
- Securities litigation (28)
- Environmental/Toxic tort (30)
- Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- RICO (27)
- Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- Partnership and corporate governance (21)
- Other petition *(not specified above)* (43)

2. This case   X is        is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a.   Large number of separately represented parties        d.  X  Large number of witnesses
   b.  X  Extensive motion practice raising difficult or novel   e.  x  Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve               in other counties, states, or countries, or in a federal court
   c.  ·X  Substantial amount of documentary evidence         f.   Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.  X  monetary  b.  X  nonmonetary; declaratory or injunctive relief  c.  X  punitive

4. Number of causes of action *(specify):* fourteen (14)

5. This case   X is        is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date:  Dec. 21, 2018

Adam M. Tamburelli, Esq.
(TYPE OR PRINT NAME)                                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal
Solutions
Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice—
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach—Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case—Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ—Administrative Mandamus
  Writ—Mandamus on Limited Court
    Case Matter
  Writ—Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal—Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late
    Claim
  Other Civil Petition

CASE NUMBER: CGC-18-572397  TRICIA YEOMANS ET AL VS. WORLD FINANCIAL GROUP I

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:**  MAY-29-2019

**TIME:**  10:30AM

**PLACE:**  **Department 610**
**400 McAllister Street**
**San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110
no later than 15 days before the case management conference.  However, it would facilitate
the issuance of a case management order  **without an appearance**  at the case
management conference if the case management statement is filed, served and lodged in
Department 610 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and
complaint. Proof of service subsequently filed with this court shall so state.  **This case is
eligible for electronic filing and service per Local Rule 2.11. For more information,
please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place
of filing a written response to the complaint. You must file a written response with the
court within the time limit required by law. See Summons.]**

## ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN
MEDIATION, ARBITRATION, NEUTRAL EVALUATION, AN EARLY SETTLEMENT CONFERENCE, OR
OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

**(SEE LOCAL RULE 4)**

Plaintiff  <u>must</u>  serve a copy of the Alternative Dispute Resolution (ADR) Information Package
on each defendant along with the complaint.  (CRC 3.221.) The ADR package may be
accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a
paper copy from the filing clerk. All counsel must discuss ADR with clients and opposing
counsel and provide clients with a copy of the ADR Information Package prior to filing
the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400  McAllister Street, Room 103-A**
**San Francisco, CA  94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to Judge pro tem.**



**Superior Court of California, County of San Francisco**
**Alternative Dispute Resolution**
**Information Package**



> The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

## WHAT IS ADR?

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to trial.

## WHY CHOOSE ADR?

It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

> **Electing to participate in an ADR process does not stop the time period to respond to a complaint or cross-complaint**

## WHAT ARE THE ADR OPTIONS?

The San Francisco Superior Court offers different types of ADR processes for general civil matters. The programs are described below:

## 1) MANDATORY SETTLEMENT CONFERENCES

Settlement conferences are appropriate in any case where settlement is an option. The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the court and are often held near the date a case is set for trial, although they may be held earlier if appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

(A) **MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF)**, in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending. Experienced professional mediators work with parties to arrive at a mutually agreeable solution. The mediators provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. BASF staff handles conflict checks and full case management. The success rate for the program is 67% and the satisfaction rate is 99%. BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

(B) **JUDICIAL MEDIATION PROGRAM** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

(C) **PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

(D) **COMMUNITY BOARDS MEDIATION SERVICES:** Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

## 3) ARBITRATION

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

### (A) JUDICIAL ARBITRATION

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.1 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

### (B) PRIVATE ARBITRATION

Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

For more information about ADR programs or dispute resolution alternatives, contact:

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
415-551-3869
Or, visit the court's ADR page at www.sfsuperiorcourt.org/division/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. <u>YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.</u>

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
400 McAllister Street
San Francisco, CA 94102-4514

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER |
| | DEPARTMENT 610 |

1) The parties hereby stipulate that this action shall be submitted to the following ADR process:

☐ **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐ **Mediation Services of Community Boards (CB)** - Service in conjunction with DRPA. CB provides case development and one three-hour mediation session. Additional sessions may be scheduled. The cost is $45-$100 to open a case and an hourly rate of $150 for complex cases. Reduction and waiver of the fee are available to those who qualify. communityboards.org

☐ **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐ **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

☐ **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

Judge Requested (see list of Judges currently participating in the program) _____

Date range requested for Judicial Mediation (from the filing of stipulation to week of mediation)

☐ 150-90 days  ☐ 90-120 days  ☐ Other (please specify) _____

☐ **Other ADR process (describe)** _____

2) The parties agree that the ADR Process shall be completed by (date): _____

3) Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

_____

| Name of Party Stipulating | Name of Party Stipulating |
| Name of Party or Attorney Executing Stipulation | Name of Party or Attorney Executing Stipulation |
| Signature of Party or Attorney | Signature of Party or Attorney |
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

*Additional signature(s) attached*

STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION