1  Spencer C. Skeen CA Bar No. 182216
   spencer.skeen@ogletree.com
2  Marlene M. Moffitt CA Bar No. 223658
   marlene.moffitt@ogletree.com
3  Tim L. Johnson CA Bar No. 265794
   tim.johnson@ogletree.com
4  Jesse C. Ferrantella CA Bar No. 279131
   jesse.ferrantella@ogletree.com
5  Cameron O. Flynn CA Bar No. 301830
   Cameron.Flynn@ogletree.com
6  OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
   4370 La Jolla Village Drive, Suite 990
7  San Diego, CA  92122
   Telephone:    858.652.3100
8  Facsimile:    858.652.3101

9  Attorneys for Defendants WORLD FINANCIAL GROUP INSURANCE AGENCY, INC. and
   WORLD FINANCIAL GROUP, INC.

10

11                          **UNITED STATES DISTRICT COURT**

12                        **NORTHERN DISTRICT OF CALIFORNIA**

13

14  TRICIA YEOMANS, ISMAIL CHRAIBI,          Case No. 19-CV-00792-EMC
    ADRIAN RODRIGUEZ, ROBERT
15  JENKINS, DOROTHY JENKINS,                **NOTICE OF MOTION TO COMPEL**
    CAMERON BRADFORD and FATEMEH             **ARBITRATION OF INDIVIDUAL CLAIMS,**
16  ABTAHI individually and on behalf of all **DISMISS CLASS CLAIMS, AND STAY**
    others similarly situated and aggrieved, **CASE; MEMORANDUM OF POINTS AND**
17                                           **AUTHORITIES IN SUPPORT THEREOF**
                   Plaintiffs,
18                                           Date: August 27, 2020
             v.                              Time: 1:30 p.m.
19
    WORLD FINANCIAL GROUP
20  INSURANCE AGENCY, INC., a California
    corporation; WORLD FINANCIAL GROUP,
21  INC., a Delaware corporation; and DOES 1 to
    100, inclusive
22
                   Defendants.
23

24

25

26

27

28

On August 27, 2020, at 1:30 p.m. in Courtroom 5 on the 17th floor of the above-captioned court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants move the Court for an order to compel Plaintiffs to arbitrate their claims on an individual basis in separate arbitrations, dismiss class claims, and stay the case. They do so under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*.

Plaintiffs must arbitrate their claims on an individual basis under their signed agreements, including any claims about enforcement of the agreements. None of the bases for revocation exists. However, if the Court finds it cannot order arbitration in accordance with the signed agreements and enforceability is not an issue for arbitration, Defendants request a jury trial on "the making of the agreement for arbitration" and "the failure to comply therewith." 9 U.S.C § 4.

Defendants make this Motion on this Notice of Motion, the Memorandum of Points and Authorities, the Declarations filed concurrently herewith, all pleadings and papers on file, and on such other matters as may be presented to the Court. Defendants file this Motion after conferring with opposing counsel and upon instruction of the Court.

DATED: June 18, 2020

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.

By:  */s/ Spencer C. Skeen*
    Spencer C. Skeen
    Marlene M. Moffitt
    Tim L. Johnson
    Jesse C. Ferrantella
    Attorneys for Defendants

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS MOTION TO COMPEL
OF INDIVIDUAL CLAIMS

# <u>TABLES OF CONTENTS</u>

**Page(s)**

I.      INTRODUCTION ................................................................................................ 1

II.     RELEVANT BACKGROUND .......................................................................... 1

    A.   The Agreement to Arbitrate ................................................................... 1

    B.   Plaintiffs Admit Signing the AMA ........................................................ 1

    C.   Plaintiffs Made Provably False Statements Trying to Avoid
        Arbitration ............................................................................................. 2

    D.   The Evidence Undermines the Claims Made By Plaintiffs ...................... 3

III.    PLAINTIFFS CONSENTED TO THE AMA ..................................................... 4

    A.   Plaintiffs Consented Through Their Conduct .................................. 4

    B.   Even if Plaintiffs Did Not Review the Full AMA, They Are Still
        Bound By Its Terms ............................................................................... 4

IV.     PLAINTIFFS ARE CONTRACTUALLY OBLIGATED TO ARBITRATE
    THEIR CLAIMS .............................................................................................. 6

    A.   The FAA Applies to the Arbitration Agreement ............................... 6

    B.   Federal Law Strongly Favors Enforceability of Arbitration
        Agreements ............................................................................................ 6

    C.   Plaintiffs Executed a Valid Agreement to Arbitrate ...................... 7

    D.   The Arbitration Agreement Encompasses the Claims Here ................... 8

V.      THERE IS NO BASIS FOR REVOCATION OF THE ARBITRATION
    AGREEMENT ................................................................................................. 9

    A.   Plaintiffs Cannot Establish Unconscionability ................................. 9

        1.   The Arbitration Agreement Is Not Procedurally
           Unconscionable ....................................................................... 10

        2.   The Arbitration Agreement Is Not Substantively
           Unconscionable ....................................................................... 10

    B.   The Court Should Sever Any Provision of the Arbitration
        Agreement It Finds Unenforceable ............................................... 11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS MOTION TO COMPEL
OF INDIVIDUAL CLAIMS

VI.     THE COURT SHOULD DISMISS CLASS CLAIMS WITHOUT
        PREJUDICE AND ORDER INDIVIDUAL ARBITRATION ................................. 12

VII.    THE COURT SHOULD STAY THIS ACTION PENDING
        ARBITRATION ........................................................................................ 13

VIII.   THE COURT CAN DELEGATE ANY UNRESOLVED ISSUES
        REGARDING ENFORCEABILITY ......................................................... 13

IX.     CONCLUSION ...................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A&M Produce Co. v. FMC Corp.*,
    135 Cal. App. 3d 473 (1982) ....................................................................................10

*Abramson v. Juniper Networks, Inc.*,
    115 Cal. App. 4th 638 (2004) ..................................................................................11

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) ..................................................................................................6

*Armendariz v. Foundation Health Psychcare Serv., Inc.*,
    24 Cal. 4th 83 (2000) ....................................................................................8, 10, 11

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ......................................................................................7, 9, 10, 12

*Binder v. Aetna Life Ins. Co.*,
    75 Cal. App. 4th 832 (1999) ....................................................................................4

*Bolter v. Superior Court*,
    87 Cal. App. 4th 900 (2001) ..................................................................................10

*Brookwood v. Bank of Am.*,
    45 Cal. App. 4th 1667 (Cal. App. 6th Dist. 1996) ..................................................5, 8

*by Sandquist v. Lebo Automotive, Inc.*
    (2016) 1 Cal. 5th 233 ..............................................................................................13

*Cable Connection, Inc. v. DIRECTV, Inc.*,
    44 Cal. 4th 1334 (2008) ..........................................................................................12

*Carnival Cruise Lines, Inc. v. Shute*,
    499 U.S. 585 (1991) ..................................................................................................4

*Chan v. Drexel Burnham Lambert, Inc.*,
    178 Cal. App. 3d 632 (1986) ....................................................................................8

*Circuit City Stores, Inc. v. Adams*,
    279 F.3d 889 (9th Cir. 2002) ....................................................................................8

*Countrywide Home Loans, Inc. v. Mortgage Guaranty Ins. Corp.*,
    2011 WL 4948538 (N.D. Cal. 2011) ......................................................................13

*Dean Witter Reynolds, Inc. v. Superior Court*,
    211 Cal. App. 3d 758 (1989) ..................................................................................10

*Dotson v. Amgen, Inc.*,
    181 Cal. App. 4th 975 (2010) ..................................................................10

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ......................................................................7, 13

*Erickson v. Aetna Health Plans of California, Inc.*,
    71 Cal. App. 4th 646 (1999) ....................................................................8

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ................................................................................8

*Fittante v. Palm Springs Motors, Inc.*,
    105 Cal. App. 4th 708 (2003) ................................................................11

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ..................................................................................6

*Giuliano v. Inland Empire Personnel, Inc.*,
    149 Cal. App. 4th 1276 (2007) ..............................................................11

*Grabowski v. C.H. Robinson Co.*,
    817 F. Supp. 2d 1159 (S.D. Cal. 2011) .................................................12

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000) ..................................................................................9

*Gutierrez v. Autowest, Inc.*,
    114 Cal. App. 4th 77 (2003) ..................................................................12

*Hermosillo v. Davey Tree Surgery Co.*
    (N.D. Cal., July 13, 2018, No. 18-CV-00393-LHK) ................................4

*Huffman v. Hilltop Companies, LLC*,
    747 F.3d 391 (6th Cir. 2014) ..................................................................8

*Iskanian v. CLS Transportation Los Angeles, LLC*,
    59 Cal. 4th 348 (2014) ............................................................................9

*Kindred Nursing Centers Ltd. Partnership v. Clark*,
    137 S.Ct. 1421 (2017) .............................................................................7

*Kinecta Alternative Financial Solutions, Inc. v. Superior Court*
    (2012) 205 Cal. App. 4th 506 ...............................................................13

*KKE Architects, Inc. v. Diamond Ridge Development LLC*,
    2008 U.S. Dist. LEXIS 17127 (C.D. Cal. 2008) ...................................14

*Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C.*
    (N.D. Cal., Jan. 9, 2019, No. 18-cv-00303-WHO) ..................................5

*Knutson v. Sirius XM Radio Inc.*
   (9th Cir. 2014) 771 F.3d 559 ................................................................5

*Lamps Plus, Inc. v. Varela*
   (2019) 139 S.Ct. 1407 ......................................................................13

*Mance v. Mercedes-Benz, USA,*
   901 F. Supp. 2d 1147 (N.D. Cal. 2012) ...............................................10

*Marin Storage & Trucking v. Benco Contracting & Eng'g, Inc.,*
   89 Cal. App. 4th 1042 (2001) ..............................................................5

*Meyer v. Benko,*
   55 Cal. App. 3d 937 (1976) .................................................................4

*Mohamed v. Uber Techs., Inc.*
   (9th Cir. 2016) 836 F.3d 1102 ....................................................5, 6, 14

*Momot v. Mastro,*
   652 F.3d 982 (9th Cir. 2011) .............................................................14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
   460 U.S. 1 (1983) ...............................................................................8

*Nelsen v. Legacy Partners Residential, Inc.*
   (2012) 207 Cal. App. 4th 1115 ...........................................................13

*Nguyen v. Barnes & Noble, Inc.,*
   763 F.3d 1171 (9th Cir.2014) ..............................................................4

*Oakland-Alameda County Coliseum Auth. v. CC Partners,*
   101 Cal. App. 4th 635 (2002) .............................................................12

*Perry v Thomas,*
   482 U.S. 483 (1987) ...........................................................................6

*Quackenbush v. Allstate Ins. Co.,*
   121 F.3d 1372 (9th Cir. 1997) .............................................................7

*Rent – A – Ctr. v. Jackson,*
   561 U.S. 63 (2010) ...........................................................................14

*Roman v. Superior Court,*
   172 Cal. App. 4th 1462 (2009) ......................................................10, 11

*Serpa v. California Surety Investigations, Inc.,*
   215 Cal. App. 4th 695 (2013) ............................................................11

*Sonic–Calabasas A, Inc. v. Moreno,*
   57 Cal. 4th 1109 (2013) .................................................................9, 10

*Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ............................................................................7, 12

*Tompkins v. 23andMe, Inc.*,
    2014 WL 2903752 (N.D. Cal. Jun. 25, 2014) ............................................5

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
    25 Cal. App. 3d 987................................................................................4

**Statutes**

9 U.S.C. § 2, 3, 4 ................................................................1, 7, 9, 13

Cal. Civ. Code § 1550 ......................................................................8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS MOTION TO COMPEL OF INDIVIDUAL CLAIMS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Court lacks jurisdiction over this contractual dispute. It belongs in arbitration. Plaintiffs openly admitted they signed an agreement requiring them to arbitrate against Defendants. The agreement only allows for arbitration on an individual basis. It also plainly covers the claims here. It even covers their claim that the agreement is unenforceable. There is no legal basis to avoid arbitration. Even so, Plaintiffs refuse. (Skeen Decl., ¶ 2.) Thus, Defendants request the Court order arbitration on an individual basis, dismiss class claims, and stay any remaining claims pursuant to the FAA, 9 U.S.C. § 3.

## II.    RELEVANT BACKGROUND

### A.    The Agreement to Arbitrate

Each Plaintiff signed an Associate Membership Agreement ("AMA") under which they agreed to operate as independent contractors. (Schaad Decl., ¶ 5, 9 – 15, Exs. 2 – 8 ("AMAs").) The AMAs all contain the same arbitration provision ("Arbitration Agreement"). Under a standalone heading of "**Arbitration of Grievances**," the Arbitration Agreement states, "The Parties agree that, except as specifically provided to the contrary in this Agreement, any Grievance shall be resolved exclusively by Good Faith Arbitration." (Schaad Decl., ¶ 5, Ex. 1 – Sample AMA ("AMA" in Schaad declaration), section V - Arbitration of Grievances.) It covers all claims arising from the AMA, which includes, "Any controversy, claim or dispute arising out of or *relating to* [it]." (Schaad Decl., AMA, Glossary and Explanation of Terms, section J.) However, it is limited in one important way. It only provides for arbitration on an individual basis. It does not authorize class arbitration or joinder of claims.

### B.    Plaintiffs Admit Signing the AMA

Plaintiffs concede they signed the AMA:

- I, Fatemah Abtahi, declare as follows: … The "packet of documents I signed … includ[ed] ... [the] Signature Page of the Associate Membership Agreement ("AMA"). (UCF 41-8, ¶3.)

- I, Cameron Bradford, declare as follows: … The "packet of documents I signed … includ[ed] ... [the] Signature Page of the Associate Membership Agreement ("AMA"). (UCF No. 41-12, ¶ 3.)

- I, Ismail Chraibi, declare as follows: … The "packet of documents I signed … includ[ed] … [the] Signature Page of the Associate Membership Agreement ("AMA"). (UCF No. 41-7, ¶ 3.)

- I, Dorothy Jenkins, declare as follows: … The "packet of documents I signed … includ[ed] … [the] Signature Page of the Associate Membership Agreement ("AMA"). (UCF No. 41-10, ¶ 3.)

- I, Robert Jenkins, declare as follows: … The "packet of documents I signed … includ[ed] … [the] Signature Page of the Associate Membership Agreement ("AMA"). (UCF No. 41-9, ¶ 3.)

- I, Adrian Rodriguez, declare as follows: … The "packet of documents I signed … includ[ed] … [the] Signature Page of the Associate Membership Agreement ("AMA"). (UCF No. 41-11, ¶ 3.)

- I, Tricia Yeomans, declare as follows: … The "packet of documents I signed … includ[ed] … [the] Signature Page of the Associate Membership Agreement ("AMA"). (UCF No. 41-6, ¶ 3.) Yeomans even presented the signed page.

Plaintiffs also made these statements in connection with their request for a preliminary injunction. (See ECF No. 57.)

### C.   **Plaintiffs Made Provably False Statements Trying to Avoid Arbitration**

While Plaintiffs admit signing the AMA, they argue their signatures do not matter. However, their argument rests upon inaccurate statements. For example, Plaintiff Abtahi claims she only received an eight-page packet of documents, which she signed. She claims she did not receive the full AMA and that she only saw the signature page. She states she "believed that the eight-page document [she] received (Ex. "A") was the full and complete set of documents that [she] needed to begin work with Defendants." (ECF 41-8, ¶ 4.) She further states she "first saw a full copy of the AMA on or around the time this lawsuit was filed. Before signing … I never knowingly agreed to arbitrate grievances with Defendants or saw an arbitration clause." (Id., ¶ 6.) However, Plaintiff Abtahi executed her AMA via DocuSign, which Defendants began using in 2016. To do so, she had to access on online portal that contained the full AMA. (Schaad Decl., ¶¶ 6, 9, Ex. 2.)

Plaintiff Abtahi is not the only one who made inaccurate statements.

- Plaintiff Bradford contracted with Defendants in 2013. (ECF 41-12, ¶ 2.) He states, "Exhibit A is a true and correct representation of the packet of documents [he] was provided with at the time." (Id., ¶ 3.) Exhibit A of his declaration contains eight pages. Six of them contain revised dates in 2016, three years after he contracted with

Defendants. In 2013, he did not have access to documents revised in 2016. Likewise, Plaintiff Dorothy Jenkins, Plaintiff Rob Jenkins, and Plaintiff Rodriguez each declared that they received and signed documents years before Defendants had created the documents. (ECF Nos. 41-10, ¶ 2, 41-11, ¶ 2, 41-9, ¶ 2.)

- Plaintiff Chraibi contracted with Defendants in 2014. (ECF 41-7, ¶ 2.) He states, "Exhibit A is a true and correct representation of the packet of documents [he] was provided with at the time." (Id., ¶ 3.) Exhibit A of his declaration contains eight pages. Six of them contain revised dates in 2016, two years after he contracted with Defendants. In 2014, he did not have access to documents revised in 2016. Moreover, Defendants still have a copy of the paper AMA completed by Chraibi. It is not the same version of the documents he presented to the Court as a true and correct representation of those he signed. (Compare Schaad Decl., ¶ 14, Ex. 7, with ECF 41-7, Ex. A.)

### D.   The Evidence Undermines the Claims Made By Plaintiffs

Plaintiffs claim they only received and signed the signature page of the AMA. (See Declarations in Opposition to Transfer of Venue, ¶ 4 (When I signed the signature page, I did not review nor did I receive the full AMA document") and ¶ 6 or 9 – depending on declaration format – ("I first saw a full copy of the AMA on or around the time this lawsuit was filed").) In essence, they claim they had no notice of the full AMA, making anything they did not see voidable at their option. However, to accept this argument, one must ignore the numerous times Plaintiffs received actual notice of the full AMA.

- The footer on the signature page describes the document as the "Associate Membership Agreement" and states "Page 6" as the page number, indicating five other pages.

- The first paragraph on the signature page is "Paragraph O," indicating Paragraphs A through N before. The last sentence of Paragraph O states, "The Associate is over eighteen years of age and ***has read the above authorization and release prior to its execution***," indicating there is a prior authorization and release.

- Likewise, the other documents Plaintiffs received and signed reference the AMA. For example, the Credit Card Agreement states it is for "payment for the [AMA]." (See, e.g., ECF 42-1, pg. 8.) It also states, "If you chose to pay by credit card, please complete the form below and attach it to the front of the [AMA]." The acknowledgments state that agents "must sign the World Financial Group [AMA]." (Id., pg. 4.)

Plaintiffs cannot credibly claim they had no notice of the full AMA. Not surprisingly, other agents contradict their claims. (See e.g., Declarations of Charlier, Cruz, Dao, Day, Devers, Rogers, and Villalobos.) They explain what actually happens before someone contracts with Defendants: he

1    or she can review the full AMA (now Agent Agreement), including the Arbitration Agreement

2    contained therein.

3    **III.**    **PLAINTIFFS CONSENTED TO THE AMA**

4        **A.**    **Plaintiffs Consented Through Their Conduct**

5        "'Assent [to a contract] may be manifested by written or spoken words, or by

6    conduct,' *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999), and acceptance of contract

7    terms may be implied through action or inaction, *see Carnival Cruise Lines, Inc. v. Shute*, 499 U.S.

8    585, 593-95 (1991)." (*Hermosillo v. Davey Tree Surgery Co.* (N.D. Cal., July 13, 2018, No. 18-CV-

9    00393-LHK) [pp. 13]) Thus, "an offeree, knowing that an offer has been made to him but not

10   knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer

11   contains." *Windsor Mills, Inc. v. Collins & Aikman Corp.,* 25 Cal. App. 3d 987, 991. Courts must

12   determine whether the outward manifestations of consent would lead a *reasonable person* to believe

13   the offeree has assented to the agreement. (*Meyer v. Benko,* 55 Cal. App. 3d 937, 942–43 (1976).)

14       Plaintiffs received notice of the full AMA and signed the signature page. Then, they acted

15   under it for years and received payment per its terms. Plaintiffs also admit presenting the AMA

16   signature page to others. Their conduct manifested consent to Defendants. They cannot escape the

17   contractual terms of the AMA just because they want to do so.

18       **B.**    **Even if Plaintiffs Did Not Review the Full AMA, They Are Still Bound By Its**

19           **Terms**

20       "[C]ourts have consistently enforced agreements where the user had actual notice of the

21   agreement ... [or] where the user is required to affirmatively acknowledge the agreement before

22   proceeding." (*Nguyen v. Barnes & Noble, Inc.,* 763 F.3d 1171, 1176 (9th Cir.2014).) Only where a

23   reasonably prudent user would not have been on inquiry notice that a terms of use agreement existed

24   is the agreement not enforced. (*Id.* citing *Specht v. Netscape Communications Corp.* (2d Cir. 2002)

25   306 F.3d 17.)

26       In *Knutson v. Sirius XM Radio Inc.* (9th Cir. 2014) 771 F.3d 559, 565, the plaintiff bought a

27   Toyota with 90-day trial subscription to Sirius XM radio. About a month after Sirius XM activated

28   his trial subscription, plaintiff received a "Welcome Kit" from Sirius XM that contained a Customer

     Agreement. Plaintiff sued under the Telephone Consumer Protection Act when he received three

unauthorized calls from Sirius XM on his cellphone. Sirius XM moved to compel arbitration based on a customer agreement contained in the "Welcome Kit" it mailed to plaintiff. Plaintiff opposed, claiming he never saw it. The Ninth Circuit noted that a party is not able to void the terms of a contract because the party failed to read them before signing. (*Id.*, at 556 (citing *Marin Storage & Trucking v. Benco Contracting & Eng'g, Inc.,* 89 Cal. App. 4th 1042 (2001).) It held a person can only avoid an agreement where a "writing does not appear to be a contract and the terms are not called to the attention of the recipient." (*Id.*, at 567). The court only refused to enforce Knutson's agreement with Sirius XM, because, unlike here, there was no reason for Knutson to think the mailing he received from Sirius XM after contracting with Toyota was another contract.

In *Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C.,* (N.D. Cal., Jan. 9, 2019, No. 18-cv-00303-WHO) [pp. 8], the plaintiff argued she cannot be considered to have agreed to an arbitration agreement because she had no actual notice of it. However, the evidence showed the opposite. In enforcing the arbitration agreement, the court found that just because the plaintiff may not have seen it does not preclude enforcement. (*Id.* See also *Mohamed v. Uber Techs., Inc.,* 109 F. Supp. 3d 1185, 1198 (N.D. Cal. 2015), *aff'd in part, rev'd in part and remanded,* 836 F.3d 1102 (9th Cir. 2016), and *aff'd in part, rev'd in part and remanded,* 848 F.3d 1201 (9th Cir. 2016) ("it is essentially irrelevant whether a party actually reads the contract or not, so long as the individual had a legitimate opportunity to review it"); *Brookwood v. Bank of Am.,* 45 Cal. App. 4th 1667, 1673 (Cal. App. 6th Dist. 1996) (rejecting argument that plaintiff could "rescind a contract simply by proving her unilateral ignorance of the contractual terms" where plaintiff argued she was unaware that security registration agreement contained arbitration provision).)

Contract formation in the internet era is also instructive. There are two types of contractual scenarios frequently encountered in the digital realm: "clickwrap" and "browsewrap" agreements. *Tompkins v. 23andMe, Inc.,* 2014 WL 2903752, at *7 (N.D. Cal. Jun. 25, 2014) at *5-6. "A clickwrap agreement 'presents the user with a message on his or her computer screen, requiring that the user manifest his or her assent to the terms of the license agreement by clicking on an icon.'" *Id.* at *5 (quoting *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17, 22 n. 4 (2d Cir.2002)). Contrast that to the "defining feature of browsewrap agreements [where] the user can continue to use the

website or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists." *Id.* at *6 (citation omitted). Courts enforce clickwrap agreements, but usually not browsewrap agreements. *Id.* at *7. In the clickwrap context, clicking the button is sufficient to bind the person to an agreement even if the person needs to take other affirmative actions to see the contract. This provides notice because "courts have long upheld contracts where 'the [person] is prompted to examine terms of [the agreement] that are located somewhere else.'" *Mohamed v. Uber Techs., Inc.* (N.D. Cal. 2015) 109 F. Supp. 3d 1185, 1197 (internal citations omitted.)

Plaintiffs all admit signing the AMA, a document stating the AMA included multiple pages and terms. The signature page also clearly shows the contractual nature of the AMA, as do the other documents Plaintiffs signed. At bottom, they received more notice than the plaintiffs in the above cases did. Their alleged lack of prudence of reviewing the full AMA before signing cannot form a basis for escaping terms they do not like. Their contentions fall well outside of the prudent person standard.

## IV.   PLAINTIFFS ARE CONTRACTUALLY OBLIGATED TO ARBITRATE THEIR CLAIMS

### A.   The FAA Applies to the Arbitration Agreement

The FAA governs the Arbitration Agreement since the AMA affects interstate commerce. *See Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 281-82 (1995). Numerous courts have found that the FAA governs the type of agreements at issue here. *See, e.g., Perry v Thomas*, 482 U.S. 483 (1987); *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 25-26 & n.2 (1991).

Here, ample interstate activity brings the Arbitration Agreement under the purview of the FAA. Plaintiffs are residents and citizen of California. (Complaint, ¶ 9.) They contracted with Defendants, who are Georgia residents, to perform various duties. Further, at all relevant times, Defendants marketed and operated nationwide. (*See* Schaad Decl. ¶ 3.) Hence, the FAA governs.

### B.   Federal Law Strongly Favors Enforceability of Arbitration Agreements

Congress enacted the FAA to reverse longstanding judicial hostility to arbitration agreements and to place them on the same "equal footing" as other contracts. *Kindred Nursing Centers Ltd. Partnership v. Clark*, 137 S.Ct. 1421, 1424 (2017) ("The [FAA] [] requires courts to place arbitration

agreements 'on equal footing with all other contracts'"); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 338 (2011). The FAA makes private agreements to submit disputes to arbitration "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It evinces a strong public policy for arbitration, mandating that courts, upon motion, "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id*. at § 4. Indeed, "the central or 'primary' purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp*., 559 U.S. 662, 682 (2010); *Concepcion*, 563 U.S. at 344 ("the overarching purpose of the FAA … is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings"). The FAA "leaves no place for the exercise of discretion by a … court, but instead mandates that … courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Quackenbush v. Allstate Ins. Co*., 121 F.3d 1372, 1380 (9th Cir. 1997) (internal citations omitted).

The Supreme Court affirmed longstanding belief in the efficacy and legitimacy of arbitration agreements in *Kindred Nursing Centers Ltd. Partnership v. Clark*, 137 S.Ct. 1421 (2017). It declared the FAA "requires courts to place arbitration agreements 'on equal footing with all other contracts.'" *Id*. at 1424. It also struck down a rule that singled out arbitration agreements for "disfavored treatment." *Id*. at 1427. Recently, the Supreme Court again confirmed courts must "enforce arbitration agreements according to their terms." *Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1621 (2018). It also held that courts should not create defenses unique to arbitration agreements; only traditional contract defenses apply. *Id*. at 1622.

### C.    Plaintiffs Executed a Valid Agreement to Arbitrate

In determining the validity of an arbitration agreement, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). California law establishes four essential elements to form a valid contract: (1) parties capable of contracting; (2) mutual consent; (3) a lawful object; and (4) sufficient cause or consideration. Cal. Civ. Code § 1550 "Any doubts concerning the scope of arbitrable issues should be resolved in favor

of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Additionally, the traditional notions that courts should construe ambiguities in a contract against a drafter, do not apply in the arbitration context. *See Erickson v. Aetna Health Plans of California, Inc.*, 71 Cal. App. 4th 646, 658 (1999); *Chan v. Drexel Burnham Lambert, Inc.,* 178 Cal. App. 3d 632, 639 (1986); *see also Huffman v. Hilltop Companies, LLC*, 747 F.3d 391, 396–97 (6th Cir. 2014).

The elements for a valid arbitration agreement are satisfied here. *First*, the parties had the legal capacity to contract. *Second*, they indicated their mutual consent by receiving notice of the full AMA and signing it. The AMA plainly states, "The Parties agree that, except as specifically provided to the contrary in this Agreement, any Grievance shall be resolved exclusively by Good Faith Arbitration." (Schaad Decl., AMA, section V – Arbitration of Grievances.). *Third*, arbitration is also a well-established lawful objective under federal and California law. *See, e.g. Brookwood v. Bank of America*, 45 Cal. App. 4th 1667, 1671 (1996) (acknowledging California's "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution"). Finally, the consideration for an arbitration agreement is legally adequate where, as here, each party agrees that the arbitration process binds the party. *See Armendariz v. Foundation Health Psychcare Serv., Inc.,* 24 Cal. 4th 83, 118 (2000). Thus, the Arbitration Agreement constitutes a valid agreement to arbitrate under California law.

### D.      The Arbitration Agreement Encompasses the Claims Here

The AMA states, "[A]ny Grievance shall be resolved exclusively by Good Faith Arbitration." (Schaad Decl., AMA, section V – Arbitration of Grievances.) The term "Grievance" includes "[a]ny controversy, claim or dispute arising out of or relating to this Agreement, between the Associate, on the one part, and WFG … on the other part." (*Id.*, at Glossary and Explanation of Terms Section J.)

Plaintiffs allege Defendants misclassified them as independent contractors under the AMA. They claim that, as employees, Defendants violated various provisions of the California Labor Code by failing to pay properly, failing to reimburse for business expenses, failing to provide accurate wage statements, and failing to maintain necessary payroll records. (ECF No. 23.) All of their claims

1  fall within the scope of the Arbitration Agreement because the claims arise from the AMA's

2  classification of Plaintiffs as an independent contractor. Thus, the Arbitration Agreement

3  encompasses their claims.

4  **V.      THERE IS NO BASIS FOR REVOCATION OF THE ARBITRATION**

5  **AGREEMENT**

6         A court must enforce an arbitration agreement, unless the party resisting arbitration can

7  demonstrate there is a legal or equitable basis for revocation under contract law. 9 U.S.C. § 2; *Green*

8  *Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000) ("party resisting arbitration bears the

9  burden of proving that the claims at issue are unsuitable for arbitration").

10        **A.      Plaintiffs Cannot Establish Unconscionability**

11         Defendants dispute the applicability of California's unconscionability doctrine as it relates

12 to arbitration agreements. The FAA governs the Arbitration Agreements and case law is clear that

13 such agreements are not subject to state laws that disfavor enforcement. *See AT&T Mobility LLC v.*

14 *Concepcion*, 563 U.S. 333, 1748 (2011) (holding states may not use state contract law principles to

15 impose limitations or requirements "as an obstacle" to the unfettered use of arbitration agreements);

16 *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 360 (2014) (stating "a state's

17 refusal to enforce [arbitration agreements that waived the right to class proceedings] on grounds of

18 public policy or unconscionability is preempted by the FAA"); *Sonic–Calabasas A, Inc. v. Moreno*,

19 57 Cal. 4th 1109, 1142-43 (2013).

20         However, even if the doctrine applies, the Arbitration Agreement is enforceable. Under

21 California law, a contract is enforceable unless it is both procedurally and substantively

22 unconscionable. Both elements of unconscionability must be present to render a contract

23 unenforceable. *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486-87 (1982); *Armendariz*,

24 24 Cal. 4th at 114. If a court finds that an arbitration agreement is unconscionable, the court may

25 refuse to enforce the agreement or it may sever the unconscionable provision and enforce the

26 remainder of the agreement. *Armendariz*, 24 Cal. 4th at 121-22. Only if an agreement is "permeated

27 with unconscionability" can a court deem it unenforceable. *Id.* at 122; *Bolter v. Superior Court*, 87

28 Cal. App. 4th 900, 910-11 (2001).

       There are no grounds for revoking the Arbitration Agreement based on unconscionability.

1.      **The Arbitration Agreement Is Not Procedurally Unconscionable**

The procedural element of the unconscionability doctrine focuses on oppression or surprise arising from inequality in bargaining power. *Sonic-Calabasas*, 57 Cal. 4th at 1133. Oppression "refers to an inequality of bargaining power resulting in no real negotiation and the absence of meaningful choice...." *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 767 (1989) (internal quotations and citations omitted). Surprise "occurs when the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id*. (internal quotations and citations omitted).

Regarding oppression, Plaintiffs will likely contend the Arbitration Agreement is procedurally unconscionable because Defendants presented it on a take-it-or-leave-it basis. However, this argument fails. California courts have repeatedly concluded adhesion alone cannot support a finding of procedurally unconscionability. *See Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1471, n. 2 (2009); *Dotson v. Amgen, Inc*., 181 Cal. App. 4th 975, 981-82 (2010). Further, since *Concepcion*, courts have been even less inclined to find procedural unconscionability in "take-it-or-leave-it" cases. "The clear import of *Concepcion* ... pushes against finding that an adhesive contract, without more, is per se procedurally unconscionable." *Mance v. Mercedes-Benz, USA*, 901 F. Supp. 2d 1147, 1161-62 (N.D. Cal. 2012). Particularly in the services and labor context, courts have upheld arbitration clauses despite claims plaintiffs received them as part of an adhesion contract. *See e.g. Giuliano v. Inland Empire Personnel, Inc*., 149 Cal. App. 4th 1276, 1292 (2007); *Serpa v. California Surety Investigations, Inc*., 215 Cal. App. 4th 695, 704 (2013).

On the factor of surprise, the Arbitration Agreement is simple and straightforward. It does not include hidden terms. It is contained in a section titled in bold font "**Arbitration of Grievances**." (See Schaad Decl., AMA, section V – Arbitration of Grievances (emphasis in the original).) Plaintiffs cannot credibly claim surprise by the obligation to arbitrate disputes with Defendants, when Defendants plainly presented such obligation.

2.      **The Arbitration Agreement Is Not Substantively Unconscionable**

Even if Plaintiffs could establish procedural unconscionability (which Defendants dispute), an agreement must still be enforced if it is free from substantive unconscionability. *Armendariz*, 24

Cal. 4th at 114. Under California law an arbitration agreement need only reflect a "modicum of bilaterality," to be enforceable. *Abramson v. Juniper Networks, Inc*., 115 Cal. App. 4th 638, 656-57 (2004); *see also Armendariz*, 24 Cal. 4th at 117.

Here, the Arbitration Agreement easily satisfies this low standard. It is not one-sided, but is bilateral, fair, and mutual. Both Plaintiffs and Defendants must submit their claims to arbitration, subject to the same rules and procedures, and the same advantages and disadvantages. (See Schaad Decl. AMA, at section V – Arbitration of Grievances and Glossary and Explanation of Terms, section I.) It incorporates the rules/procedures of the AAA. (See Schaad Decl., AMA, Glossary and Explanation of Terms, section S.) The AAA Rules provide both parties with access to discovery and remedies. (See Skeen Decl. ¶ 3, Ex. 1.) It also states, "Discovery … may be ordered by the arbitrator(s)." Finally, it allows the arbitrator to "award any type of remedy that could be awarded by a court." (Schaad Decl., AMA, Glossary and Explanation of Terms, sections I (3) and (4).)

Accordingly, under California law, the Arbitration Agreement is substantively conscionable. *See Serpa*, 215 Cal. App. 4th at 705; *Roman*, 172 Cal. App. 4th at 1473; *Fittante v. Palm Springs Motors, Inc.*, 105 Cal. App. 4th 708, 725 (2003).

**B.** **The Court Should Sever Any Provision of the Arbitration Agreement It Finds Unenforceable**

If the Court finds any provision of the Arbitration Agreement unenforceable, the proper remedy is to sever that clause and enforce the remainder of the Arbitration Agreement. Under California law, courts routinely modify or sever a clause from an otherwise enforceable agreement. *Gutierrez v. Autowest, Inc*., 114 Cal. App. 4th 77, 92 (2003). Further, courts are particularly apt to sever an objectionable clause where the parties have agreed to do so. *See Oakland-Alameda County Coliseum Auth. v. CC Partners*, 101 Cal. App. 4th 635, 646-647 (2002), disapproved of on other grounds by *Cable Connection, Inc. v. DIRECTV, Inc*., 44 Cal. 4th 1334 (2008). Similarly, federal courts have routinely severed unconscionable provisions from arbitration agreements to further the federal policy in favor of arbitration. *See, e.g., Grabowski v. C.H. Robinson Co.*, 817 F. Supp. 2d 1159, 1179 (S.D. Cal. 2011) (severing non-mutual injunctive relief carve-out, confidentiality provision, and attorney fees provision; "The Court finds that, given the 'liberal federal policy favoring arbitration,' ..., the three substantively unconscionable provisions may be severed from the

agreement"). (Schaad Decl., AMA, Glossary and Explanation of Terms, section D (8) (providing for severability.)

## VI.   THE COURT SHOULD DISMISS CLASS CLAIMS WITHOUT PREJUDICE AND ORDER INDIVIDUAL ARBITRATION

Under binding Supreme Court authority, courts must enforce arbitration agreements according to their terms. *Stolt-Nielsen*, 559 U.S. at 682; *Concepcion*, 563 U.S. at 344. Parties are "free to structure their arbitration agreements as they see fit," which means that they "may agree to limit the issues they choose to arbitrate," and "with whom they choose to arbitrate their disputes." *Stolt-Nielsen*, 559 U.S. at 683 (internal citations omitted). "It falls to courts and arbitrators to give effect to these contractual limitations…." *Id*. at 684. Thus, on class arbitration, "it follows that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielsen*, 559 U.S. at 684. The reason is that arbitration provides for "streamlined proceedings" to resolve disputes. *Concepcion*, 563 U.S. at 344. Class action proceedings are anything but streamlined. "[R]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id*.

In 2018, the Supreme Court instructed courts to look no further than the agreement itself to resolve class arbitrability. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). Last year, the United States Supreme Court reaffirmed and extended this principle. In *Lamps Plus, Inc. v. Varela* (2019) 139 S.Ct. 1407, 1415, the Supreme Court held that even an "ambiguous agreement" cannot provide "the necessary 'contractual basis' for compelling class arbitration." The Supreme Court clarified the FAA "requires more than ambiguity to ensure that the parties actually agreed to arbitrate on a classwide basis." (*Id*.)[1]

---

[1] California authority is consistent. For example, in *Kinecta Alternative Financial Solutions, Inc. v. Superior Court* (2012) 205 Cal. App. 4th 506, 511, *disapproved of on other grounds by Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal. 5th 233, the court considered bilateral, two-party language in an arbitration agreement. Relying on *Stolt-Nielsen*, the court held that "the parties *did not* agree to authorize class arbitration" and reversed the trial court's denial of Kinecta's motion to dismiss class claims. (*Id*. at 517-518.) Likewise, in *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal. App. 4th 1115, the court held that an employment arbitration agreement with two-party language failed to provide a legitimate basis for concluding the parties agreed to permit class arbitration.

Here, the Arbitration Agreement refers only to arbitration of claims between Plaintiffs, as an individual, and Defendants. (Schaad Decl., AMA and AMAs.) The Arbitration Agreement uses the same "two-party language" as in *Stolt-Nielsen* and *Lamps Plus*. Nothing in the agreement suggests the parties agreed to include the claims of other independent contractors or groups of independent contractors. Any attempt by Plaintiffs to argue otherwise would read new terms into the Arbitration Agreement that simply do not exist. Courts must enforce arbitration agreements "according to their terms," consistent with the intent of the parties. This is mandatory under the FAA.

## VII.  THE COURT SHOULD STAY THIS ACTION PENDING ARBITRATION

Plaintiffs must arbitrate their individual claims, leaving only claims for penalties under California's Private Attorneys General Act ("PAGA"). Under the FAA, the Court should stay the PAGA claims. See 9 U.S.C. §§ 3, 4 (where a court compels arbitration, it must stay the case pending the outcome of arbitration); *see also Countrywide Home Loans, Inc. v. Mortgage Guaranty Ins. Corp.*, 2011 WL 4948538, at *2 (N.D. Cal. 2011) ("The language of Section 3 is mandatory and it compels a court to stay litigation of issues that are reserved for arbitration"); *KKE Architects, Inc. v. Diamond Ridge Development LLC*, 2008 U.S. Dist. LEXIS 17127, *14 (C.D. Cal. 2008) (if there is an enforceable arbitration agreement, courts may dismiss or stay judicial action).

## VIII.  THE COURT CAN DELEGATE ANY UNRESOLVED ISSUES REGARDING ENFORCEABILITY

Where there is language "delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause, [it] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement." *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (quoting Rent – A – Ctr., 561 U.S. at 68, 130 S.Ct. 2772) (internal quotation marks omitted). In "accordance with Supreme Court precedent, [courts] are required to enforce these agreements 'according to their terms.'" *Mohamed v. Uber Techs., Inc.* (9th Cir. 2016) 836 F.3d 1102, 1110 (citing *Rent – A – Ctr. v. Jackson*, 561 U.S. 63, 67 (2010).)

The AMA states "***any*** Grievance shall be resolved exclusively by Good Faith Arbitration" and the term "grievance" includes "***any*** controversy, claim or dispute ***arising out of or relating to*** this Agreement, between the Associate, on the one part, and WFG . . . on the other part." (Schaad Decl., AMA, sections V – Arbitration of Grievances, and Glossary and Explanation of Terms, section

J (emphasis added).) Thus, Plaintiffs must arbitrate their claims on an individual basis pursuant to their signed AMA, including any claims about enforcement.

## IX.    CONCLUSION

For the foregoing reasons, Defendants request the Court order Plaintiffs to submit their claims to arbitration on an individual basis, dismiss class claims, and stay the remains claims pending resolution of the arbitration.


DATED: June 18, 2020                          OGLETREE, DEAKINS, NASH, SMOAK &
                                              STEWART, P.C.

                                              By:  */s/ Spencer C. Skeen*
                                                   Spencer C. Skeen
                                                   Marlene M. Moffitt
                                                   Tim L. Johnson
                                                   Jesse C. Ferrantella
                                                   Cameron O. Flynn
                                                   Attorneys for Defendants

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on June 18, 2020 I electronically filed the foregoing with the Clerk of

3 the Court using the CM/ECF system which will send notification of such filing to the email addresses

4 denoted on the Notice of Electronic Filing.

5      I certify under penalty of perjury under the laws of the United States of America that the

6 foregoing is true and correct.  Executed on June 18, 2020

7

8                          By:  */s/ Spencer C. Skeen*
                                   Spencer C. Skeen

9                                                  43235538.1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28