1  Spencer C. Skeen CA Bar No. 182216
   spencer.skeen@ogletree.com
2  Marlene M. Moffitt CA Bar No. 223658
   marlene.moffitt@ogletree.com
3  Tim L. Johnson CA Bar No. 265794
   tim.johnson@ogletree.com
4  Jesse C. Ferrantella CA Bar No. 279131
   jesse.ferrantella@ogletree.com
5  Cameron O. Flynn CA Bar No. 301830
   Cameron.Flynn@ogletree.com
6  OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
   4370 La Jolla Village Drive, Suite 990
7  San Diego, CA  92122
   Telephone:    858.652.3100
8  Facsimile:     858.652.3101

9  Attorneys for Defendants WORLD FINANCIAL GROUP INSURANCE AGENCY, INC. and
   WORLD FINANCIAL GROUP, INC.

10

11                     **UNITED STATES DISTRICT COURT**

12                    **NORTHERN DISTRICT OF CALIFORNIA**

13

14  TRICIA YEOMANS, ISMAIL CHRAIBI,          Case No. 19-CV-00792-EMC
    ADRIAN RODRIGUEZ, ROBERT
15  JENKINS, DOROTHY JENKINS,                **REPLY IN SUPPORT OF DEFENDANTS'**
    CAMERON BRADFORD and FATEMEH             **MOTION TO COMPEL ARBITRATION OF**
16  ABTAHI individually and on behalf of all **INDIVIDUAL CLAIMS, DISMISS CLASS**
    others similarly situated and aggrieved,  **CLAIMS, AND STAY CASE**
17
                    Plaintiffs,              Hearing Date: August 27, 2020
18                                           Hearing Time: 1:30 p.m.
                 v.
19
    WORLD FINANCIAL GROUP
20  INSURANCE AGENCY, INC., a California
    corporation; WORLD FINANCIAL GROUP,
21  INC., a Delaware corporation; and DOES 1 to
    100, inclusive
22
                    Defendants.
23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................... 1

II.     RELEVANT FACTS ................................................................................................ 1

     A.      Plaintiffs Admit They Signed the Arbitration Agreement .............................. 1

     B.      The Declarations Submitted by Plaintiffs Prove They Saw the Full
          AMA ................................................................................................................ 1

     C.      Abtahi (and Thousands of Other Putative Class Members) Signed
          the AMA Via DocuSign ................................................................................. 2

III.    ARGUMENT REGARDING ARBITRATION AGREEMENT ................................. 3

     A.      Plaintiffs Executed and Are Bound by Their Contractual Agreement
          to Arbitrate All Disputes ............................................................................... 3

          1.      Plaintiffs Admit They Signed the Arbitration Agreement ................. 3

          2.      Plaintiffs' Performance under the Contract Demonstrates
                 Consent ............................................................................................... 4

          3.      DocuSign Affirmatively Demonstrates Consent to be Bound
                 by the AMA ........................................................................................ 5

     B.      The FAA Applies to the Arbitration Agreement ............................................. 6

     C.      The Arbitration Agreement Is Not Unconscionable ........................................ 8

          1.      There Is Minimal Procedural Unconscionability ............................... 8

          2.      There Is Minimal Substantive Unconscionability and the
                 Court Should Sever Any Unconscionable Provision ........................ 10

     D.      The AMA Is Not Superseded ........................................................................ 11

     E.      The Court Must Stay the Non-Arbitrable Claims ......................................... 12

IV.     THE MAKING OF THE AGREEMENT TO ARBITRATE IS AN ISSUE
      FOR AN ARBITRATOR, OR, AT LEAST, A JURY TRIAL ................................ 13

V.      CONCLUSION ...................................................................................................... 13

REPLY ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Allied–Bruce Terminix Companies, Inc. v. Dobson*
(1995) 513 U.S. 265 ............................................................................................................7

*American Title Ins. Co. v. Lacelaw Corp.*
(9th Cir. 1988) 861 F.2d 224 ...........................................................................................4

*Armendariz v. Foundation Health Psychcare Serv., Inc.*
(2000) 24 Cal.4th 83................................................................................................8, 11

*AT&T Mobility LLC v. Concepcion*
(2011) 563 U.S. 333 ........................................................................................................8

*Brookwood v. Bank of Am.*
(Cal. App. 6th Dist. 1996) 45 Cal. App. 4th 1667...........................................................5

*Burgoon v. Narconon of N. California*
(N.D. Cal. 2015) 125 F. Supp. 3d 974............................................................................10

*Carlson v. Home Team Pest Def., Inc.*
(2015) 191 Cal. Rptr. 3d 29............................................................................................9

*Circuit City Stores, Inc. v. Adams*
(2001) 532 U.S. 105 ........................................................................................................7

*Citizens Bank v. Alafabco, Inc.*
(2003) 539 U.S. 52 ..........................................................................................................7

*Cobarruviaz v. Maplebear, Inc.*
(N.D. Cal. 2015) 143 F. Supp. 3d 930...........................................................................13

*Colvin v. Nasdaq OMX Grp., Inc.*
(N.D. Cal., Nov. 4, 2015, No. 15-cv-02078-EMC) .......................................................11

*Countrywide Home Loans, Inc. v. Mortgage Guaranty Ins. Corp.*
(N.D. Cal. 2011) 2011 WL 4948538 .............................................................................12

*Craig v. Brown & Root, Inc.*
(2000) 84 Cal. App. 4th 416............................................................................................4

*Dean Witter Reynolds, Inc. v. Superior Court*
(1989) 211 Cal. App. 3d 758 ..........................................................................................9

*Dominguez v. Stone Brewing Co.*
(S.D. Cal., July 2, 2020, Case No.: 20-cv-251-WQH-BLM) .......................................12

*Espejo v. Southern California Permanente Medical Group*
　　(2016) 246 Cal.App.4th 1047 ...................................................................................2

*Fed. Trade Comm'n v. Qualcomm Inc.,*
　　No. 17-CV-00220-LHK, 2018 WL 5848999 (N.D. Cal. Nov. 6, 2018) ......................6

*Franco v. Arakelian Enterprises, Inc.*
　　(2015) 234 Cal. App. 4th 947 ...................................................................................12

*Grabowski v. Robinson*
　　(S.D. Cal. 2011) 817 F. Supp. 2d 1159 .................................................................5, 10

*Hermosillo v. Davey Tree Surgery Co.*
　　(N.D. Cal., July 13, 2018, No. 18-CV-00393-LHK) ...................................................4

*Herrera v. CarMax Auto Superstores California, LLC,*
　　No. CV–14–776–MWF, 2014 WL 3398363 ...............................................................7

*Jacobson v. Snap-on Tools Co.*
　　(N.D. Cal. Dec. 9, 2015 Case No. 15-cv-02141-JD, 2015 WL 8293164, at *6 ) ......13

*Jenks v. DLA Piper Rudnic Gray Cary US LLP*
　　(2015) 243 Cal. App. 4th 1 ......................................................................................11

*KKE Architects, Inc. v. Diamond Ridge Development LLC*
　　(C.D. Cal. 2008) 2008 U.S. Dist. LEXIS 17127 .......................................................12

*Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C.*
　　(N.D. Cal., Jan. 9, 2019, No. 18-cv-00303-WHO) ......................................................5

*Lane v. Francis Capital Management LLC*
　　(2014) 224 Cal.App.4th 676 .......................................................................................8

*Lovig v. Best Buy Stores LP*
　　(N.D. Cal., Aug. 28, 2018, No. 18-cv-02807-PJH) ...................................................13

*Malone v. Superior Court*
　　(2014) 226 Cal. App. 4th 1551 .................................................................................10

*Mance v. Mercedes-Benz, USA*
　　(N.D. Cal. 2012) 901 F. Supp. 2d 1147......................................................................8

*McGill v. Citibank*
　　(2017) 2 Cal. 5th 945, 966 .......................................................................................12

*Mohamed v. Uber Techs., Inc.*
　　(9th Cir. 2016) 836 F.3d 1102 ...................................................................................13

*Mohamed v. Uber Techs., Inc.*
　　(N.D. Cal. 2015) 109 F. Supp. 3d 1185, *aff'd in part*, *rev'd in part and remanded*, 836 F.3d 1102 (9th Cir. 2016) ....................................................................5

REPLY ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS

*Momot v. Mastro*
    (9th Cir. 2011) 652 F.3d 982 ...................................................................................13

*Montes v. San Joaquin Community Hospital*
    (E.D. Cal. Jan. 29, 2014) No. 1:13–cv–01722–AWI–JLT, 2014 WL 334912 ...........................7

*Newton v. Am. Debt Servs., Inc.*
    (N.D. Cal. 2012) 854 F. Supp. 2d 712 ...................................................................5, 6

*Nguyen v. Barnes & Noble, Inc.*
    (9th Cir.2014) 763 F.3d 1171 .................................................................................5

*O'Hanlon v. JPMorgan Chase Bank, N.A.*
    (C.D. Cal., Oct. 7, 2015 No. CV1506640DDPPJWX) 2015 WL 5884844 ...............................11

*United States ex rel. Oliver v. Parsons Co.*
    (9th Cir. 1999) 195 F.3d 457 .................................................................................3

*Openshaw v. FedEx Ground Package Sys., Inc.*
    (C.D. Cal. 2010) 731 F. Supp. 2d 987 ......................................................................10

*Oxford Preparatory Acad. v. Edlighten Learning Solutions*
    (2019) 34 Cal. App. 5th 605, 610 ...........................................................................11

*Pereyra v. Guaranteed Rate, Inc.*
    (N.D. Cal., June 28, 2019, No. 18-cv-06669-EMC) ....................................................9, 10

*Pope v. Sonatype, Inc.*
    (N.D. Cal. May 8, 2015) 2015 WL 2174033 ................................................................10

*Ramirez-Baker v. Beazer Homes, Inc.*
    (E.D. Cal. 2008) 636 F.Supp.2d 1008 .......................................................................11

*Ruiz v. Moss Bros. Auto Group, Inc.*
    (2014) 232 Cal.App.4th 836 ...................................................................................2

*Shepard v. Edward Mackay Enterprises, Inc.*
    (2007) 148 Cal.App.4th 1092 ..................................................................................8

*Shepardson v. Adecco USA, Inc.*
    (N.D. Cal. Apr. 5, 2016) Case No. 15-cv-05102-EMC, 2016 WL 1322994 .............................13

*Windsor Mills, Inc. v. Collins & Aikman Corp.*
    (Cal. Ct. App. 1972) 25 Cal.App.3d 987 ....................................................................4

*Yahoo! Inc. v. Iversen*
    (N.D. Cal. 2011) 836 F.Supp.2d 1007 .......................................................................6

**Statutes**

9 U.S.C. §§ 3, 4 .....................................................................................................12

9 U.S.C § 4 ..................................................................................................................................13

U.S. Electronic Signatures in Global and National Commerce Act ....................................................5

REPLY ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS

## I.       INTRODUCTION

In the First Amended Complaint ("FAC"), Plaintiffs admit signing the Associate Membership Agreement ("AMA") and that it governed their contractual relationship with Defendants. Yet now, they claim they never saw the full AMA until they filed the lawsuit, but notably, they do not deny having access to it via WFG's internal website. Oddly, some also claim they deprived others the opportunity to initially review the full AMA by fraudulently signing for them via DocuSign without consent. However, this admission actually undermines the claim they never saw the full AMA. Indeed, if they did DocuSign on behalf of others, they reviewed the full AMA because the DocuSign process requires it. In other words, their self-serving claims do not help them side step their agreement to arbitrate.

At bottom, the undisputed evidence shows Plaintiffs knew of, had access to, and continued to act under the full AMA. They concede it governed their relationship with Defendants. Thus, they cannot escape its provisions, including the agreement to arbitrate. The Court should grant the Motion in its entirety.

## II.      RELEVANT FACTS

### A.      Plaintiffs Admit They Signed the Arbitration Agreement

*Plaintiffs admit they signed the AMA*. (FAC, ¶ 5.) The FAC states the AMA sets forth "uniform rules and policies promulgated by Defendants," which they claim subjected them to strict control. (FAC, ¶ 5.) It also states the AMA governed their relationship with Defendants. (FAC, ¶¶ 41-54.) However, they ignore the arbitration provision in the AMA, which is under a separate heading: "The Parties agree that, except as specifically provided to the contrary in this Agreement, any Grievance shall be resolved exclusively by Good Faith Arbitration." (See Declaration of Andrew Schaad ("Schaad Decl."), Ex. 1: Sample AMA, Section V – Arbitration of Grievances.)

### B.      The Declarations Submitted by Plaintiffs Prove They Saw the Full AMA

Plaintiffs claim the first time they saw a full copy of the AMA is when they filed this lawsuit. Thus, they claim they "never knowingly agreed to arbitrate grievances with Defendants." (Abtahi Decl., ¶ 6; Bradford Decl., ¶ 6; Chraibi Decl., ¶ 6; Jenkins, D., Decl., ¶ 7; Jenkins, R., Decl., ¶ 8; Rodriguez Decl., ¶ 7; Yeomans Decl., ¶ 6.) However, these contentions defy the realities. They had

the ability to review the full AMA on WFG's internal website. (Declaration of Chip Palid ("Palid Decl."), ¶ 8; Schaad Decl., ¶¶ 6, 7.) Indeed, they all acknowledge WFG's online system and most know of DocuSign (which mandates review of the entire AMA). (Abtahi Decl., ¶¶ 15 - 16; Bradford Decl., ¶¶ 10 - 11; Chraibi Decl., ¶¶ 14, 16; Jenkins, D., Decl., ¶¶ 10, 13; Jenkins, R., Decl., ¶¶ 11, 14; Rodriguez Decl., ¶ 8 ; Yeomans Decl., ¶¶ 15 - 17.) Moreover, Plaintiffs Abtahi, Bradford, Chraibi, and Yeomans declared they fraudulently signed AMAs on behalf of others via DocuSign:[1]

> When I docusigned on behalf of the new recruit, I never reviewed the document with or provided a copy to the new recruit. To be clear, I would sign the downline associate's name and/or initials to documents, including the signature page of the AMA…

(Abtahi Decl., ¶ 16; Bradford Decl., ¶ 11; Chraibi Decl., ¶ 16; Yeomans Decl., ¶ 17.) However, the way the DocuSign process works, a person must view (or scroll past) every page of the document before signing. (Palid Decl., ¶ 9.) This means that Plaintiffs Abtahi, Bradford, Chraibi, and Yeomans all saw the full AMA, including the arbitration agreement due to their fraudulent DocuSign practice. Plaintiff Robert Jenkins also admits he saw a full AMA before this lawsuit. (Jenkins, R. Decl., ¶ 9.)

## C.   Abtahi (and Thousands of Other Putative Class Members) Signed the AMA Via DocuSign

Defendants presented Plaintiff Abtahi's AMA with the moving papers. It contains a signature via DocuSign. In response, she claims "[she] never docusigned the AMA." (Opposition, 4:4.) To support this claim, she points out the executed AMA reverses her name and initials – a mistake she would not commit. Yet, she did so on other documents. On the "Authorization Agreement Form for Direct Deposit (ACH Credits): U.S." form – another form signed by her via DocuSign – she wrote her name as Abtahi Fatemah and signed it the same way. (Supplemental Declaration of Andrew Schaad ("Schaad Supp. Decl."), ¶ 2, Ex. A.)[2] Remarkably, when she needed to identify the name on her bank account, she reversed the name from how she stated it in other places on the document:

---

[1] Defendants do not endorse, encourage, ratify, or in any way advocate fraudulent signing practices.
[2] A party moving to compel arbitration meets its initial burden simply by attaching a copy of a purported agreement to arbitrate along with an electronic signature. (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1060.) Once the non-moving party challenges the authenticity of his or her signature, the moving party is then required to establish its authenticity by a preponderance of the evidence. (*Id.*) The moving party may submit such evidence, for example, by way of a supplemental declaration on reply. (*Id.* at p. 1055; *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 847-848.)

"Fatemeh Abtahi." (*Id*.) In other words, on the same form, she wrote her name two different ways. This form is dated roughly two months after her AMA, October 27, 2016 – which means none of the purported pressure or hurry from the initial sign-on existed. (*Id*.)

Next, she alleges Chad Greer signed her AMA via DocuSign. He denies doing so. (See Declaration of Chad Greer, ¶ 10, see also ¶ 11.) Moreover, the DocuSign Certificate – the electronic audit trail – tells the truth. (Schaad Supp. Decl., ¶ 2, Ex. B.) It reveals she received the AMA on August 30, 2016 at 11:33:22 AM. (*Id*.) She viewed the AMA immediately at 11:33:36. (*Id*.) She signed the AMA two minutes later at 11:35:21. (*Id*.) She signed it "ABTAHI FATEMEH." (*Id*.) On the other hand, Chad Greer only received the AMA *after* she signed it, at 11:35:23. (*Id*.) He did not view it until 4:42:01 PM and signed it at 4:45:04. (*Id*.)

Additionally, DocuSign sent the AMA to her personnel email address: FABTAHI2016@gmail.com. (*Id*.) The same email address to which DocuSign sent her MDA, a document she admits signing via DocuSign. (Abtahi Decl., ¶ 12; Schaad Supp. Decl., ¶ 2, Ex. C.)

Finally, the DocuSign Certificate confirms DocuSign sent the full AMA – 21 pages. (Schaad Supp. Decl., ¶ 2, Ex. B.) This means two things: (1) she could view the entire AMA when she signed it, and (2) her statement that she "first saw a full copy of the AMA on or around the time this lawsuit was filed" is false. (Abtahi Decl., ¶ 6.)

## III.   ARGUMENT REGARDING ARBITRATION AGREEMENT

### A.   Plaintiffs Executed and Are Bound by Their Contractual Agreement to Arbitrate All Disputes

Under California contract law, the elements for a viable contract are (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. (*United States ex rel. Oliver v. Parsons Co.* (9th Cir. 1999) 195 F.3d 457, 462.) The only dispute here is whether Plaintiffs consented to the arbitration agreement.

#### 1.   Plaintiffs Admit They Signed the Arbitration Agreement

Plaintiffs admit they signed the AMA and that it governed their relationship with Defendants. (FAC, ¶ 5, 42.) They cannot run from these admissions. "[U]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court. Not only are such

1    admissions and stipulations binding before the trial court, but they are binding on appeal as well."

2    (*American Title Ins. Co. v. Lacelaw Corp.* (9th Cir. 1988) 861 F.2d 224, 226 (citations omitted).)

3    "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a

4    fact from issue and dispensing wholly with the need for proof of the fact." Courts consider factual

5    assertions in pleadings and pretrial orders as judicial admissions conclusively binding on the party

6    who made them. (*Id.*, (citations omitted).)[3]

7        Plaintiffs have not amended their pleadings to exclude the fact that they signed the AMA and

8    are bound by it – including the provision mandating grievances like these be submitted to individual

9    binding arbitration. On the one hand, they cannot rely on the AMA to assert their claims and, on the

10   other hand, argue they did not know about it. Estoppel bars them from doing so.

11                    **2.    Plaintiffs' Performance under the Contract Demonstrates Consent**

12       Assuming Plaintiffs did not see the full AMA when they started their relationship with WFG

13   and signed the signature page, such a fact is not determinative of its enforcement. Words or conduct

14   may demonstrate assent to a contract. (*Hermosillo v. Davey Tree Surgery Co.* (N.D. Cal., July 13,

15   2018, No. 18-CV-00393-LHK) [pp. 13].) Likewise, courts may imply acceptance of contract terms

16   through action or inaction. (*Id.*) Even where an offeree of a contract does not know all the terms of

17   a contract, but accepts it anyway, it binds the offeree. (*Windsor Mills, Inc. v. Collins & Aikman Corp.*

18   (Cal. Ct. App. 1972) 25 Cal.App.3d 987, 99.) Further, where an offeree learns of contractual terms

19   after acceptance of the offer and continues to perform under the contract, the terms bind the offeree.

20   (See *Craig v. Brown & Root, Inc.* (2000) 84 Cal. App. 4th 416, 420.)

21       Now, Plaintiffs argue that they signed the AMA with no clue of its terms – some apparently

22   thought it to be "a release so that WFG could use [their] photograph" (Chraibi Decl., ¶ 7; Yeomans,

23   Decl., ¶ 7), while others just signed it without a second thought as to its contents. However, their

24   own admissions undermine these claims. For example, four of them admit they signed documents on

25   behalf of others via DocuSign, thereby conceding they went through every page of the AMA. This

26

27   ───────────────
     [3] As required by 7-3(c), Defendants object to the declarations. They present conflicting evidence to
28   the FAC. The Court should disregard them since the admissions in the FAC are binding. (See
     *American Title Ins. Co. v. Lacelaw Corp.* (9th Cir. 1988) 861 F.2d 224, 227 (holding "failure to
     contend that an opposing party's admission barred entry of conflicting evidence is a waiver of the
     argument that the issue was conclusively settle").)

means – contrary to their declarations – that those Plaintiffs did see the full AMA. (See *Nguyen v. Barnes & Noble, Inc.* (9th Cir.2014) 763 F.3d 1171, 1176 (holding that "courts have consistently enforced agreements where the user had actual notice of the agreement").) Further, the AMA is available on WFG's online system. Plaintiffs could have gone on at any time to review its contents – contents Plaintiffs argue in the FAC governed the whole of their relationship with Defendants. Even where a plaintiff has not seen the whole agreement, where there was access available, plaintiff's failure to review the agreement does not preclude enforcement. (See *Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C.,* (N.D. Cal., Jan. 9, 2019, No. 18-cv-00303-WHO) [pp. 8].)

A plaintiff cannot "rescind a contract simply by proving her unilateral ignorance of the contractual terms." (*Brookwood v. Bank of Am.* (Cal. App. 6th Dist. 1996) 45 Cal. App. 4th 1667, 1673.) In fact, "it is essentially irrelevant whether a party actually reads the contract or not, so long as the individual had a legitimate opportunity to review it." (*Mohamed v. Uber Techs., Inc.* (N.D. Cal. 2015) 109 F. Supp. 3d 1185, 1198, *aff'd in part, rev'd in part and remanded*, 836 F.3d 1102 (9th Cir. 2016), and *aff'd in part, rev'd in part and remanded*, 848 F.3d 1201 (9th Cir. 2016).)

Even if Plaintiffs blindly signed the AMAs, they clearly later had access to it and did not immediately seek to sever the relationship. Instead, they kept performing under it, meaning they consented to the AMA, including the arbitration agreement.

### 3.    DocuSign Affirmatively Demonstrates Consent to be Bound by the AMA

"[I]t is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends ... [and] the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." (*Grabowski v. Robinson* (S.D. Cal. 2011) 817 F. Supp. 2d 1159, 1168.) Plaintiff Abtahi is the only plaintiff to DocuSign the AMA. Without any support, she claims Chad Greer forged it on her behalf. However, he denies doing so and the evidence establishes otherwise.

The Court has examined documents signed via DocuSign before. In *Newton v. Am. Debt Servs., Inc.* (N.D. Cal. 2012) 854 F. Supp. 2d 712, the plaintiff signed a contract with an arbitration agreement using DocuSign. The Court identified DocuSign as "a company that is used to electronically sign documents in compliance with the U.S. Electronic Signatures in Global and

National Commerce Act (ESIGN)." (*Id.* at 731.) Under ESIGN, electronic records and signatures in compliance with ESIGN are legally binding. The Court explained:

> DocuSign permits a company to send documents to a customer for their signature. The customer opens the document for review containing areas marked for the signatory to execute. The signer creates a signature and must click a button saying "Confirm Signing" once they have completed all form fields and signed in all required places. ... Once signed, the signature is assigned an identifying code, such as the one that appears above [p]laintiff's signature on the [] contract.

(*Ibid.*) Here, DocuSign has effectively done what it is supposed to do: show Plaintiff Abtahi signed the AMA despite her direct contentions to the contrary. Her self-motivated (and clearly inaccurate) statements cannot supersede an independent and respected third party's demonstration that she reviewed and signed the AMA sent to her personal email.

### B. The FAA Applies to the Arbitration Agreement

Plaintiffs contend the FAA does not apply to the arbitration agreement. They claim Defendants have not shown "the activities at issue in the Complaint have a 'substantial relation to interstate commerce.'" (Opposition, 7:25-26.) However, that is not the test for determining whether the FAA applies to a *contract*, like the AMA. Defendants have produced more than enough evidence to trigger the FAA's application to the arbitration agreement. (Schaad Decl., ¶¶ 3-6.) Plaintiffs also admit they sold "financial products to California residents" but they fail to acknowledge where those products came from – companies outside of California. (Schaad Supp. Decl., ¶ 3.)[4]

"The FAA applies to any contract affecting interstate commerce." (*Yahoo! Inc. v. Iversen* (N.D. Cal. 2011) 836 F.Supp.2d 1007, 1009 (citing *Kramer v. Toyota Motor Corp.* (9th Cir. 2013) 705 F.3d 1122, 1126).) Section 2 of the FAA states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

---

[4] *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2018 WL 5848999, at *12 (N.D. Cal. Nov. 6, 2018) (allowing reply evidence because offered to rebut argument first raised in the opposition).

The Supreme Court has held the FAA applies to contracts if the performance thereunder affects interstate commerce in anyway. (*Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 119.) The term "involving commerce" "signals an intent to exercise Congress' commerce power to the full." (*Id.* at 115 (citing *Allied–Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 277.) The phrase "involving commerce" in the FAA is the functional equivalent of the term "affecting commerce," which is a term of art that ordinarily signals the broadest permissible exercise of Congress' commerce clause power. (*Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52, 55.) Given the statute "provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause,'" the Supreme Court has held that "the FAA encompasses a wider range of transactions than those actually 'in commerce'—that is 'within the flow of interstate commerce.'" (*Id.* at 56 (citations excluded).) The Supreme Court has put to rest any notion that the term "evidencing a transaction involving commerce" meant that the parties must have contemplated substantial interstate activity when they signed the agreement. (*Allied–Bruce, supra,* 513 U.S. at 277 (italics omitted).) For example, the *Alafabco* court concluded debt-restructuring agreements involved commerce because of the "broad impact of commercial lending on the national economy [and] Congress' power to regulate that activity pursuant to the Commerce Clause." (*Alafabco*, *supra*, 539 U.S. at 57–58.)

There is no doubt the FAA governs here. Indeed, courts have routinely found the FAA applies where there the impact on interstate commerce is much less. (See, e.g., *Herrera v. CarMax Auto Superstores California, LLC,* No. CV–14–776–MWF (VBKx), 2014 WL 3398363, *2 - 3 (concluding that an employment contract between CarMax and three former employees—a painter, service mechanic, and automotive service technician—involved interstate commerce); *Montes v. San Joaquin Community Hospital* (E.D. Cal. Jan. 29, 2014) No. 1:13–cv–01722–AWI–JLT, 2014 WL 334912, *5 (concluding that an employment contract between plaintiff and a hospital was governed by the FAA because the hospital's activities were involved interstate commerce); see also *Allied–Bruce, supra*, 513 U.S. at 282 (concluding a relationship involved interstate commerce where defendant was a national corporation engaged in business in multiple states).)

1    Finally, the cases Plaintiffs cite do not apply here because they involved situations where the

2    defendant did not put forth any evidence regarding interstate commerce. (See *Lane v. Francis Capital*

3    *Management LLC* (2014) 224 Cal.App.4th 676, 688 (finding the defendant raised FAA preemption

4    in a footnote, but submitted no declarations or evidence to establish interstate commerce; *Woolls v.*

5    *Superior Court* (2005) 127 Cal.App.4th 197, 214 (finding the defendant "'made no attempt to

6    establish its actions' fell within the ambit of federal law").) Likewise, *Hoover v. American Income*

7    *Life Ins. Co.* is not applicable because it involves a CBA and a contract that did not capture the

8    disputes. ((2012) 206 Cal.App.4th 1193.) Further, in the *Shepard*, the court granted the motion to

9    compel arbitration when a homeowner sued a homebuilder for construction defects. (*Shepard v.*

10   *Edward Mackay Enterprises, Inc.* (2007) 148 Cal.App.4th 1092.) It applied the FAA because it found

11   constructing the house involved the receipt and use of building materials manufactured and/or

12   produced outside California. It found this despite also finding no evidence that either party resided

13   out-of-state, engaged in business out-of-state, or used interstate media to engage in advertising. (*Id.*

14   at 1100.)  It also found no evidence of the use of out-of-state professional services. (*Ibid.*)

15   Here, Defendants provided ample evidence of the AMA affecting interstate commerce.

16   Accordingly, the FAA applies to the arbitration agreement.

17   **C.    The Arbitration Agreement Is Not Unconscionable**

18   Under California law, a contract is enforceable unless it is both procedurally and

19   substantively unconscionable. Only if an agreement is "'permeated' by unconscionability" can a

20   court deem it unenforceable. (*Armendariz v. Foundation Health Psychcare Serv., Inc.* (2000) 24

21   Cal.4th 83, 121.)

22   **1.    There Is Minimal Procedural Unconscionability**

23   Plaintiffs argue the AMA is one of adhesion. However, since *Concepcion*, such arguments

24   have found little traction. (See e.g., *Mance v. Mercedes-Benz, USA* (N.D. Cal. 2012) 901 F. Supp.

25   2d 1147, 1161-62 (finding the "clear import of *Concepcion* ... pushes against finding that an adhesive

26   contract, without more, is per se procedurally unconscionable") (citing *AT&T Mobility LLC v.*

27   *Concepcion*, (2011) 563 U.S. 333, 1748.)

28

Plaintiffs also argue surprise because they claim they did not know about the AMA. However, surprise only "occurs when the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." (*Dean Witter Reynolds, Inc. v. Superior Court* (1989) 211 Cal. App. 3d 758, 767 (internal quotations and citations omitted).) Here, there is no evidence Defendants hid the AMA from Plaintiffs. Indeed, Plaintiffs do not deny having access to the full AMA via WFG's internal website.

Furthermore, this case is not like *Carlson v. Home Team Pest Def., Inc.* (2015) 191 Cal. Rptr. 3d 29. There, the plaintiff asked about the dispute resolution policy, but was told she could not access it for weeks. (*Id.*, at 39.) The plaintiff never got access to the arbitration agreement despite her requests; instead, the first time she received it was when she filed her lawsuit. Plaintiffs here had the ability to review the full AMA on WFG's online website. (Palid Decl., ¶ 8; Schaad Decl., ¶¶ 6, 7.) They also saw it each time they signed for others via DocuSign. They do not contend they asked about the arbitration agreement and Defendants refused the information, like the plaintiff in *Carlson*.

They also argue surprise because Plaintiffs must "reference several different paragraphs, with the terms of the arbitration agreement found only in the "Glossary and Explanation of Terms" section. (Opposition, 18:18-20.) However, the AMA is only six pages with the glossary being another four pages. The AMA contains sections emphasizing the arbitration provisions. Likewise, the AMA defines terms in stand-alone paragraphs. This is not a 100-page document with the arbitration agreement buried in the middle in a footnote.

Finally, Plaintiffs contend that failing to include the AAA's Commercial Rules is so oppressive the court cannot permit enforcement of the agreement. However, courts have held otherwise. (See, e.g., *Pereyra v. Guaranteed Rate, Inc.* (N.D. Cal., June 28, 2019, No. 18-cv-06669-EMC) [pp. 7] (holding that where a "challenge to the enforcement of the agreement has nothing to do with the AAA rules," a party's "failure to attach the AAA rules" does not raise the level of procedural unconscionability) (citing *Baltazar v. Forever 21, Inc.* (2016) 62 Cal. 4th 1237, 1246).)

In sum, there is only minimal procedural unconscionability here.

2.      **There Is Minimal Substantive Unconscionability and the Court Should Sever Any Unconscionable Provision**

Plaintiffs rely heavily on questionable pre-*Concepcion* authority to contend severability is not an option here. (See *Malone v. Superior Court* (2014) 226 Cal. App. 4th 1551, 1556 (finding *Ontiveros* no longer good law after the United States Supreme Court's subsequent resolution of *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, which overruled a line of California authority considered impermissibly hostile to arbitration.).) In reality, federal courts routinely sever unconscionable provisions from arbitration agreements to further the federal policy favoring arbitration. (*See, e.g., Grabowski v. C.H. Robinson Co.* (S.D. Cal. 2011) 817 F. Supp. 2d 1159, 1179.) This is especially true where the parties contractually agreed to sever problematic provisions as they did here. (See Schaad Decl., AMA, Glossary and Explanation of Terms, section D (8) (providing for severability.) There is no authority that "any time there is more than one unconscionable provision, severance is not possible." (*Burgoon v. Narconon of N. California* (N.D. Cal. 2015) 125 F. Supp. 3d 974, 990.)

Here, Plaintiffs contend three stand-alone portions of the arbitration agreement are unconscionable requiring invalidation of the entire agreement: (1) the one-way provisions of "Extraordinary Relief" and "Equitable Relief;" (2) potential fees to Defendants as prevailing parties; and (3) not "adequate discovery." However, the Court can easily sever these provisions if it finds them unconscionable. (See *Openshaw v. FedEx Ground Package Sys., Inc.*, (C.D. Cal. 2010) 731 F. Supp. 2d 987, 998 (severing provisions without disturbing the primary intent to arbitrate disputes.) Courts routinely sever one-way provisions. (*See, e.g., Pereyra v. Guaranteed Rate, Inc.* (N.D. Cal., June 28, 2019, No. 18-cv-06669-EMC) [pp. 16] (severing these unconscionable provisions: "choice of law provision, the lack of mutuality pertaining to exceptions from arbitration, the fee provision, and the choice of forum provision"); *Grabowski v. C.H. Robinson Co.* (S.D. Cal. 2011) 817 F. Supp. 2d 1159, 1179 (severing non-mutual injunctive relief carve-out).) They also sever fee provisions. (*See, e.g., Pope v. Sonatype, Inc.* (N.D. Cal. May 8, 2015) 2015 WL 2174033, at*7 (severing provision requiring plaintiff pay attorney's fees unless he is a prevailing party"); *Pereyra v. Guaranteed Rate, Inc.* (N.D. Cal., June 28, 2019, No. 18-cv-06669-EMC) [pp. 16] (severing the following unconscionable fee provision).)

The discovery issue is a phantom one. The provision allows for adequate discovery, even if the specific rules are not articulated. In *Armendariz*, the California Supreme Court found, "when parties agree to arbitrate statutory claims, they also implicitly agree, absent express language to the contrary, to such procedures as are necessary to vindicate that claim." (24 Cal. 4th at 106.) This means parties "are at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s)...." (*Id.*; see also *Colvin v. Nasdaq OMX Grp., Inc.* (N.D. Cal., Nov. 4, 2015, No. 15-cv-02078-EMC) [pp. 16] (ordering arbitration "with the understanding that [p]laintiff will be afforded discovery rights consistent with *Armendariz*").) Further, the *O'Hanlon* case cited by Plaintiffs is not persuasive. There, the discovery provision explicitly limited discovery. (*O'Hanlon v. JPMorgan Chase Bank, N.A.* (C.D. Cal., Oct. 7, 2015 No. CV1506640DDPPJWX) 2015 WL 5884844, at *6.) There is no such limitation here.

### D.    The AMA Is Not Superseded

Any effort to supersede an arbitration agreement must be specific and intentional. The Court of Appeal's decision in *Jenks v. DLA Piper Rudnic Gray Cary US LLP* (2015) 243 Cal. App. 4th 1, is instructive. In *Jenks*, the plaintiff received and accepted an employment offer letter containing an arbitration provision and later signed a termination agreement that contained an integration clause stating, "This Agreement constitutes the entire agreement between the parties *with respect to the subject matter hereof and supersedes all prior negotiations and agreements*, whether written or oral [with the exception of the prior confidentiality agreements]." (*Id.* at 15 (emphasis added).) The Court of Appeal found that the termination agreement did not "override the arbitration provision" in the offer letter, meaning the agreement to arbitrate covered plaintiff's claims. (*Id.* at 20.) The court held that "the integration clause is explicitly limited to 'the subject matter thereof,' namely, the terms of plaintiff's resignation. (*Ibid.*; see also *Oxford Preparatory Acad. v. Edlighten Learning Solutions* (2019) 34 Cal. App. 5th 605, 610 (holding a termination agreement silent on arbitration did not supersede an earlier arbitration clause).) Unless a prior agreement specifically states it is altering the arbitration provision, the arbitration provision survives. (See *Ramirez-Baker v. Beazer Homes, Inc.* (E.D. Cal. 2008) 636 F.Supp.2d 1008, 1015–17 (finding a later employment contract did

1   not supersede the  original arbitration agreement because the later contracts were silent on

2   arbitration); *Dominguez v. Stone Brewing Co.* (S.D. Cal., July 2, 2020, Case No.: 20-cv-251-WQH-

3   BLM) [pp. 7-9] (finding an offer letter that was "silent as to arbitration" did not supersede an

4   application for employment that contained an arbitration agreement).)

5       Here, Plaintiffs claim the MDA supersedes the AMA. However, the MDA states it "addresses

6   the responsibilities, benefits and duties of the Marketing Director sales position designation" only. It

7   is not an overwriting agreement for the AMA. It states as much, "[u]nless the provisions of this

8   Agreement expressly provide otherwise, the terms and conditions of your Associate Membership

9   Agreement remain in force." (See e.g., Schaad Supp. Decl., ¶ 2, Ex. C.) Because the MDA does not

10  address arbitration, it is not part of the 'subject matter' and cannot override the AMA.

11      **E.      The Court Must Stay the Non-Arbitrable Claims**

12      Plaintiffs present no case law to support the position that PAGA claims should go forward

13  before or contemporaneously with the arbitration. That is because none exists. They try to extrapolate

14  an argument out of general principles regarding PAGA, but nowhere is there any actual support for

15  the proposition that the PAGA case should go ahead of the arbitration. That authority is lacking

16  because the language of the FAA is clear: where a court compels arbitration, it must stay the case

17  pending the outcome of arbitration (See 9 U.S.C. §§ 3, 4; *see also Countrywide Home Loans, Inc. v.*

18  *Mortgage Guaranty Ins. Corp.* (N.D. Cal. 2011) 2011 WL 4948538, at *2 ("The language of Section

19  3 is ***mandatory and it compels a court to stay litigation of issues that are reserved for***

20  ***arbitration***")(emphasis added); *KKE Architects, Inc. v. Diamond Ridge Development LLC* (C.D. Cal.

21  2008) 2008 U.S. Dist. LEXIS 17127, *14 (if there is an enforceable arbitration agreement, courts

22  may dismiss or stay judicial action).) The Court should not accept the invitation to disregard or re-

23  write the law.

24      Instead, the Court should follow the lead of numerous other courts who have stayed PAGA

25  claims pending arbitration. (See, e.g., *Franco v. Arakelian Enterprises, Inc.* (2015) 234 Cal. App.

26  4th 947, 966  (compelling arbitration and staying PAGA claims pending arbitration); *McGill v.*

27  *Citibank* (2017) 2 Cal. 5th 945, 966 ("case law establishes that a stay of proceedings as to any

28  inarbitrable    claims    is    appropriate    until    arbitration    of    any    arbitrable    claims    is

REPLY ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS

concluded"); *Shepardson v. Adecco USA, Inc.* (N.D. Cal. Apr. 5, 2016) Case No. 15-cv-05102-EMC, 2016 WL 1322994, at *6  (staying PAGA claim pending the outcome of arbitration of the plaintiff's individual Labor Code claims); *Cobarruviaz v. Maplebear, Inc.* (N.D. Cal. 2015) 143 F. Supp. 3d 930, 947  (staying PAGA claim pending outcome of arbitration of the plaintiff's individual claims); *Jacobson v. Snap-on Tools Co.* (N.D. Cal. Dec. 9, 2015 Case No. 15-cv-02141-JD, 2015 WL 8293164, at *6 ) (same); *Lovig v. Best Buy Stores LP* (N.D. Cal., Aug. 28, 2018, No. 18-cv-02807-PJH) [pp. 16] (same).)

## IV.   THE MAKING OF THE AGREEMENT TO ARBITRATE IS AN ISSUE FOR AN ARBITRATOR, OR, AT LEAST, A JURY TRIAL

If there is language "delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause, [that] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement." (*Momot v. Mastro* (9th Cir. 2011) 652 F.3d 982, 988 (citations omitted).) In "accordance with Supreme Court precedent, [courts] are required to enforce these agreements 'according to their terms.'" (*Mohamed v. Uber Techs., Inc.* (9th Cir. 2016) 836 F.3d 1102, 1110 (citing *Rent – A – Ctr. v. Jackson* (2010) 561 U.S. 63, 67.) As the AMA states, "***any*** Grievance shall be resolved exclusively by Good Faith Arbitration" and the term "grievance" includes "***any*** controversy, claim or dispute ***arising out of or relating to*** this Agreement, between the Associate, on the one part, and WFG … on the other part." If the issue of assent is not clear, which Defendants contend it is, Plaintiffs must arbitrate the issue individually. (Schaad Decl., AMA, sections V – Arbitration of Grievances, and Glossary and Explanation of Terms, section J (emphasis added).)

Alternatively, if the Court denies the Motion and finds enforceability is not an issue for arbitration, Defendants request a jury trial on "the making of the agreement for arbitration" and "the failure to comply therewith" under the FAA. (9 U.S.C § 4.) A separate trial for each individual is necessary, as the facts are unique for each Plaintiff. Indeed, any decision other than universal enforcement of the arbitration agreement is not subject to common facts.

## V.   CONCLUSION

For the foregoing reasons, Defendants request the Court order Plaintiffs to submit their claims to arbitration on an individual basis, dismiss class claims, and stay the remains claims.

1

2

DATED: August 13, 2020

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:  */s/ Spencer C. Skeen*
     Spencer C. Skeen
     Attorneys for Defendants

1

## **CERTIFICATE OF SERVICE**

2        I hereby certify that on August 13, 2020 I electronically filed the foregoing with the Clerk of

3  the Court using the CM/ECF system that will send notification of such filing to the email addresses

4  denoted on the Notice of Electronic Filing.

5        I certify under penalty of perjury under the laws of the United States of America that the

6  foregoing is true and correct. Executed on August 13, 2020

7

8                                    By:  */s/ Spencer C. Skeen*
                                          Spencer C. Skeen

9                                                                    43870376.1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28