UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRICIA YEOMANS, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>WORLD FINANCIAL GROUP<br>INSURANCE AGENCY, INC., et al.,<br><br>                    Defendants. | Case No.  19-cv-00792-EMC<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION TO STAY**<br><br>Docket No. 89 |

Pending before the Court is Defendants World Financial Group Insurance Agency, Inc. and World Financial Group, Inc.'s motion to stay this case pending their appeals of this Court's orders denying their motions to transfer the case and to compel arbitration.  *See* Docket No. 89 ("Mot.").

For the following reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' motion.

## I.        <u>BACKGROUND</u>

A.        <u>Factual Background</u>

Plaintiffs Tricia Yeomans, Ismail Chraibi, Adrian Rodriguez, Robert Jenkins, Dorothy Jenkins, Cameron Bradford, and Fatemeh Abtahi allege the following.  Defendants represent themselves as a financial- and insurance-products marketing company; they recruit individuals as "Associates" and purport to give people the tools "to build and operate their own financial services business."  *See* Docket No. 32 (First Amended Complaint ("FAC")) ¶ 1.  However, Plaintiffs assert that "Defendants conduct their business by way of a massive pyramid scheme," wherein recruiting new Associates is one of the "main factors involved in achieving promotions."  *Id.* ¶ 2.

Once someone is an Associate, Defendants pressure that person to "purchase Defendants' financial and insurance products" and to "sell financial and insurance products to the new Associates." *Id.* ¶ 3.

Central to Plaintiffs' case is their allegation that "Defendants have unlawfully misclassified Associates as 'independent contractors' rather than as employees" to further increase company profits. *Id.* ¶ 4. Specifically, each Associate is "required to sign identical, nonnegotiable Associate Membership Agreements ('AMAs')," which "set forth uniform rules and policies promulgated by Defendants, which subject Associates to strict control." *Id.* ¶ 5. "Plaintiffs and Class Members signed the AMAs." *Id.* Plaintiffs also contend that "Defendants completely control the overall operation of the business" and "retain the exclusive authority to hire and fire every Associate." *Id.* ¶¶ 6, 7. Furthermore, because of this classification, Associates earn only commissions, not minimum wage, and they bear the burden of business costs, which Defendants might otherwise bear. *Id.* ¶¶ 8, 9. In addition, Associates are improperly deprived of the protection of workers' compensation, the benefits of overtime pay, and meal and rest breaks. *Id.* ¶¶ 9, 10.

B.   Procedural Background

Plaintiffs filed this case in San Francisco Superior Court in December 2018. Defendants removed the case to federal court in February 2019. In June 2019, Plaintiffs filed a first amended class action complaint (FAC). See Docket No. 23.

Shortly after the FAC was filed, Defendants filed a motion to transfer the case to the U.S. District Court for the Northern District of Georgia, *see* Docket No. 24, which this Court denied on November 16, 2019, because the forum selection clause in the AMAs violated California public policy as expressed by section 925 of the California Labor Code, *see* Docket No. 55 ("Transfer Order"). In relevant part, section 925 provides:

> "An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would . . . [r]equire the employee to adjudicate outside of California a claim arising in California, [or] [d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California."

Cal. Labor Code § 925(a). After finding that section 925 applied to the parties' agreements, this

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Court concluded that the forum selection clauses were voidable and that the factors of Section

2   1404(a) weighed against transfer.  Transfer Order at 16.  Shortly thereafter, Defendants' filed a

3   mandamus petition asking the Ninth Circuit to transfer this case to the Northern District of

4   Georgia, notwithstanding this Court's order denying such transfer.  *See* Mot. at 1.

5         On June 18, 2020, Defendants filed a motion to compel arbitration, dismiss the class

6   claims, and stay the case, *see* Docket No. 73, which the Court denied on September 11, 2020, *see*

7   Arbitration Order.  Defendants appealed this order shortly thereafter.  *See* Docket No. 83.

8         On February 16, 2021, Defendants filed the instant motion to stay this action pending the

9   outcome of their appeals in the Ninth Circuit.

## II.      LEGAL STANDARD

11        "[T]he Ninth Circuit has held that a district court has discretion to decide whether to grant

12   a stay."  *Bradberry v. T-Mobile USA, Inc.*, No. C 06 6567 CW, 2007 WL 2221076, at *1 (N.D.

13   Cal. Aug. 2, 2007) (citing *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990)).

14   In *Britton*, the Ninth Circuit described the question whether to stay a case pending appeal of a

15   denial of a motion to compel arbitration as "a proper subject for the exercise of discretion by the

16   trial court."  916 F.2d at 1412.

17        "Courts generally consider four factors when determining whether to grant a stay pending

18   the appeal of a civil order: (1) the likelihood of the moving party's success on the merits; (2)

19   whether the moving party will be irreparably injured if a stay is not granted; (3) whether a stay

20   will substantially injure the opposing party; and (4) the public interest."  *Merkin v. Vonage Am.*

21   *Inc.*, No. 213CV08026CASMRWX, 2014 WL 12701041, at *1 (C.D. Cal. Mar. 26, 2014) (citing

22   *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Nken v. Holder*, 556 U.S. 418, 426

23   (2009); (discussing these same factors); *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011)

24   (discussing these same factors).

25        With respect to the first factor, a party "need not demonstrate that it is more likely than not

26   that they will win on the merits."  *Leiva-Perez*, 640 F.3d at 966.  A stay may be issued if the

27   moving party establishes that it "has a substantial case—a case which raises serious legal

28   questions," provided "that the balance of hardship tips sharply in its favor."  *Id.* at 971;  *see also*

*Echevarria v. Aerotek, Inc.*, No. 16-CV-04041-BLF, 2019 WL 3207812, at *2 (N.D. Cal. July 16, 2019) ("Where the movant has made a lesser showing on the first factor—establishing serious legal questions rather than a strong likelihood of success on the merits—the movant must show that the balance of hardships tips sharply in its favor." (citing *Leiva-Perez*, 640 F.3d at 970)).

For a legal question to be "serious," it must be a "question going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *Guifu Li v. A Perfect Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2011 WL 2293221, at *3 (N.D. Cal. June 8, 2011) (citing *Walmer v. United States DOD*, 52 F.3d 851, 854 (10th Cir. 1995)). "In the Ninth Circuit, serious legal questions often concern constitutionality." *Id.* When it comes to cases dealing with enforcement of arbitration agreements, courts have also "found that a serious legal question was raised when the Supreme Court had granted *certiorari* . . . [and when] the appeal asked the Ninth Circuit to resolve a split in authority." *Id.*; *see also Morse v. Servicemaster Glob. Holdings, Inc.*, No. C 08-03894, 2013 WL 123610, at *3 (N.D. Cal. Jan. 8, 2013) (discussing cases that "raise[ ] genuine matters of first impression within the Ninth Circuit" as another example).

### III.     MOTION TO STAY PENDING APPEAL

This Court will address, in turn, each of the four *Leyva-Perez* factors for staying a civil case.

A.     Likelihood of Success on the Merits or Serious Legal Questions

Defendants do not argue that they are likely to prevail on the merits of their appeals. But, as explained above, Defendants can satisfy the first *Leyva-Perez* factor by establishing that their appeals raise "serious legal questions." 640 F.3d at 966. In this district, a serious legal question generally includes (1) a "matter[] of first impression within the Ninth Circuit," (2) a "constitutional question," or (3) "a pressing legal issue which urges the Ninth Circuit to hear the case." *Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 953–54 (N.D. Cal. 2019) (quoting *Morse*, 2013 WL 123610, at *3).

Defendants argue that their direct appeal of the Court's order denying their motion to compel arbitration raises two serious legal questions.

United States District Court
Northern District of California

1    The first question, whether the Court is required to conduct a jury trial to determine if the

2    parties entered into an arbitration agreement, is not a "serious legal question" in this case because

3    the Court did not deny Defendants' motion to compel arbitration on the basis that the parties had

4    not entered into an arbitration agreement.  In fact, the Court held the opposite: "Defendants have

5    met their burden in demonstrating that Plaintiffs—except for Mr. Rodriguez—agreed to the terms

6    of the AMA when they had an opportunity to review the full terms, yet continued their work with

7    Defendants."  Arbitration Order at 16.  Therefore, it is highly unlikely that the Ninth Circuit will

8    be pressed to hear Defendants' appeal on this point.  And, even if it did, the appeal would only

9    affect the claims of Mr. Rodriguez.  Therefore, whether the Court was required to hold a jury trial

10   to determine if Defendants entered into an arbitration agreement with Mr. Rodriguez is not a

11   serious legal question that merits staying this case.

12   The second question in Defendants' direct appeal, whether "California's unconscionability

13   doctrine set forth in [*Armendariz v. Foundation Health Psychare Services, Inc.*, 6 P.3d 559 (Cal.

14   2000)] applies if the [Federal Arbitration Act (FAA)] governs, and if so, if it applies to

15   independent-contactor misclassification cases like this one," also fails to raise a serious legal

16   question.  The Ninth Circuit has approved of and applied the *Armendariz* unconscionability

17   doctrine in a myriad of FAA cases, including cases analogous to this one.  As the Court explained

18   in its arbitration order, "the Ninth Circuit has concluded that 'California law regarding

19   unconscionable contracts' is not inherently 'unfavorable towards arbitration,' and instead 'reflects

20   a generally applicable policy against abuses of bargaining power.'"  Arbitration Order at 18

21   (quoting *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 927 (9th Cir. 2013)); *see also*

22   *Chavarria*, 733 F.3d at 919 ("We conclude that Ralphs' arbitration policy is unconscionable under

23   California law, and that the state law supporting that conclusion *is not preempted by the FAA*."

24   (emphasis added));  *Mohamed v. Uber Techs., Inc.* (*Mohamed II*), 848 F.3d 1201, 1211–12 (9th

25   Cir. 2016) (applying the *Armendariz* unconscionability doctrine in a case involving independent-

26   contractor misclassification allegations).  Therefore, Defendants' direct appeal of this Court's

27   arbitration order does not present serious legal questions that would merit staying this case.

28   Defendants also argue, however, that their mandamus petition challenging this Court's

denial of their motion to transfer the case to the Northern District of Georgia raises serious legal questions about the application of section 925, which the Ninth Circuit has never discussed. *See* Mot. at 2–3. Indeed, it appears the Ninth Circuit has never addressed section 925 at all, let alone whether it prevents transferring a case where plaintiffs allege they were misclassified as independent contractors. Defendants' mandamus petition also argues that section 925 is preempted by federal law favoring forum selection clauses, and that it does not apply to contracts entered into before the law was enacted on January 1, 2017. Admittedly, almost all district courts agree with this Court's analysis of these questions. *See, e.g.*, *Buchsbaum v. Digital Intel. Sys., LLC*, No. 20-CV-00706-BAS-AGS, 2020 WL 7059515, at *7 (S.D. Cal. Dec. 2, 2020); *DePuy Synthes Sales, Inc. v. Stryker Corp.*, No. EDCV181557FMOKKX, 2020 WL 6205702, at *8 (C.D. Cal. Sept. 29, 2020); *Miller-Garcia v. Avani Media, LLC*, No. 19-CV-04130-YGR, 2020 WL 95635, at *3 (N.D. Cal. Jan. 8, 2020); *Karl v. Zimmer Biomet Holdings, Inc.*, No. 18-cv-04176-WHA, 2018 WL 5809428, at *7 (N.D. Cal. Nov. 6, 2018). That does not mean these are not "serious legal questions" because they are, as of right now, "matters of first impression in the Ninth Circuit." *Stiner*, 383 F. Supp. 3d at 953; *Cf. Mohamed v. Uber Techs., et al* (*Mohamed I*), 115 F. Supp. 3d 1024, 1032 (N.D. Cal. 2015) ("Until the Ninth Circuit issues a ruling one way or another, the validity of both *Iskanian,* and pre-dispute PAGA waivers more generally, remains an issue of first impression that is sufficiently "serious" for the purposes of Uber's motion to stay.").

Accordingly, because Defendants' mandamus petition in this case presents serious legal questions material to the outcome of the appeal since the Ninth Circuit has yet to address the question at bar, the Court will consider the remaining three factors for obtaining a stay.

## IV.    IRREPARABLE HARM TO DEFENDANTS

Defendants' portend that they will be irreparably harmed if forced to litigate their claims here, including having to respond to class-wide discovery, because if they succeed in their appeals the case will be either transferred to Georgia or to arbitration. Mot. at 4. Defendants do not specify exactly what the "harm" of litigating the case in this forum will be, but typically that harm is understood to be "(1) the loss of time and money associated with the ongoing litigation of this case pending appeal; and (2) the irrecoverable loss of the speed and efficiency of the arbitral

forum." *Mohamed I*, 115 F. Supp. 3d at 1032.

First, this Court has pointed out "that nearly all courts 'have concluded that incurring litigation expenses does not amount to an irreparable harm.'" *Id.* at 1033 (quoting *Guifu Li v. A Perfect Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2011 WL 2293221, at *4 (N.D. Cal. June 8, 2011) (collecting cases)). However, the mandamus proceeding only determines whether the case will be adjudicated in this District or the Northern District of Georgia; it does not obviate the suit. Conducting basic pre-trial discovery—two years into this litigation—would not prejudice Defendants because they will have to conduct that similar discovery if the case is to proceed in the Northern District of Georgia or in arbitration.[1] *See* Docket No. 92 ("Opp'n") at 11–12. If anything, proceeding with pre-trial discovery now will save the parties time if the Ninth Circuit sends them to either of those forums because they can use what they discover here to litigate or arbitrate Plaintiffs' claims there. *See Mohamed I*, 115 F. Supp. 3d at 1033 (denying stay and allowing the parties to conduct "reasonable" pre-trial discovery because "the main cost Uber will likely face while this appeal is pending (*i.e.,* discovery costs) would presumably be borne by Uber in any forum"). Similarly, Plaintiffs' Private Attorney General Act ("PAGA") claims will proceed in either this Court or in the Northern District of Georgia even if both of Defendants' appeals succeed. *See Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 391 (2014) (holding that PAGA claims are not arbitrable). Therefore, Defendants will not be prejudiced if this Court allows the parties to conduct reasonable pre-trial discovery while Defendants' appeals are pending.

Moreover, if this case were ordered to be transferred to the Northern District of Georgia, this Court is hesitant to preempt the transferee court from making key procedural and substantive rulings. Therefore, to avoid any injury "from the actual *adjudication* of this case on the merits in federal court," *Mohamed I*, 115 F. Supp. 3d at 1034, this Court will issue only a partial stay that "does not permit trial, dispositive motions, the certification of a class, or adjudication of this case on the merits," *Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, No. 18-CV-05226-EMC, 2020 WL 733228, at *3 (N.D. Cal. Feb. 13, 2020).

---

[1] Neither party disputes that the arbitration agreement allows the parties to conduct adequate civil discovery, bring dispositive motions, or present witnesses and evidence in arbitration.

United States District Court
Northern District of California

## V.      IRREPARABLE INJURY TO PLAINTIFFS

Plaintiffs argue that they have already suffered, and will continue to suffer, irreparable harm from "the continued delay of their case."  Opp'n at 12.  But risk of further delay will be minimized here because the Court will allow Plaintiffs to conduct reasonably tailored discovery.  If Defendants' appeals are not decided by the time the parties complete this initial discovery, Plaintiffs can move this Court to reconsider its partial stay at that time.

In sum, the balance of hardships tips sharply in favor of staying all non-discovery-related activity in this case until the Ninth Circuit rules on the merits of Defendants' appeals.

## VI.      PUBLIC INTEREST

Lastly, the public interest does not tilt strongly in either party's favor.  There are competing interests here.  On the one hand, there is an interest under the FAA in enforcing valid arbitration agreements.  *See Martinez-Gonzalez*, 2020 WL 733228, at *3.  On the other hand, "the existence of a federal policy favoring arbitration does not, by itself, require a stay," and the Court "must consider other public policies at issue, such as California's interest in enforcing its wage and hour laws."  *Id.* (quoting *Jimenez v. Menzies Aviation Inc.*, No. 15-CV-02392-WHO, 2015 WL 5591722, at *4 (N.D. Cal. Sept. 23, 2015)).  Both interests are valid and "largely . . . in equipoise for purposes of this motion."  *Mohamed I*, 115 F. Supp. 3d at 1035. Therefore, the public interest factor is neutral.

## VII.      CONCLUSION

The Court hereby **GRANTS in part** and **DENIES in part** Defendants' motion by partially staying this action for all purposes pending the issuance of the Ninth Circuit's mandate on Defendants' mandamus petition[2] except that the parties may engage in reasonable discovery commensurate with that which would likely be permitted if the case were arbitrated (which allows for any eventual ruling that this case should be arbitrated), but also including discovery keyed to the PAGA claim which is likely to proceed in any event.

---

[2] Because Defendants' direct appeal of the Court's arbitration order does not raise serious legal questions, *see supra* Part III.A., the stay is based only on the mandamus petition.

United States District Court
Northern District of California

1   Moreover, the Court hereby vacates the hearing on Defendants' motion scheduled for

2   March 25, 2021, at 1:30 p.m.  Instead, the Court will hold a status conference where it will decide

3   what discovery is reasonable while Defendants' appeals are pending.  The parties are instructed to

4   meet and confer about the scope of discovery to be permitted during the stay, keeping in mind that

5   this Court has allowed, in similar cases, focused discovery "designed to allow Plaintiffs to secure

6   and preserve the evidence needed to pursue Plaintiffs' [PAGA] . . . claims otherwise at risk due to

7   delay."  *See Martinez-Gonzalez*, 2020 WL 733228, at *3.  In the past, this has included "the

8   production of a list of individuals that might be covered by the PAGA . . . claims, contact

9   information for those individuals, time and pay records related to those claims, and depositions of

10  witnesses whose testimony might be lost with the passage of time."  *Id.*

11  This order disposes of Docket No. 89.

12

13  **IT IS SO ORDERED**.

14

15  Dated: March 19, 2021

16

17  _____

18  EDWARD M. CHEN
    United States District Judge

19

20

21

22

23

24

25

26

27

28